**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY LEONARD, IN HIS CAPACITY AS TRUSTEE OF THE POPLAWSKI 2008 INSURANCE TRUST; PHYLLIS POPLAWSKI; and PBR PARTNERS, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK and JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br>Defendants. | No.: 1:18-cv-04994-AKH |
| YURIY DAVYDOV, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK and JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br>Defendants. | No.: 18-cv-09825-AKH |

**PLAINTIFF DAVYDOV'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT SQUITIERI & FEARON, LLP AS CO-LEAD INTERIM CLASS COUNSEL AND IN OPPOSITION TO THE *LEONARD* PLAINTIFFS' MOTION TO APPOINT SUSMAN GODFREY LLP AS SOLE INTERIM CLASS COUNSEL**

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................... 1

BACKGROUND ....................................................................................................... 3

ARGUMENT ....................................................................................................... 4

I. The Court Should Appoint Squitieri & Fearon as Co-Lead Interim Class Counsel ............ 4

A. Appointing Squitieri & Fearon as Interim Co-lead Counsel Will Protect The Class By Including Counsel for "Mom-And-Pop" Policyholders and Not Putting the Litigation Solely In The Hands of Counsel Whose Only Plaintiffs Bought $10,000,000 Stranger-Owned Or Trust-Owned Policies ............ 5

B. Appointing Squitieri & Fearon as Interim Co-lead Counsel Will Help Protect the Class Against Issues That Will Arise From Susman Godfrey's Repeated Filing of Lawsuits For Professional Policyholder Investor Plaintiffs ............ 6

C. Squitieri & Fearon, LLP Meets Each Requirement for Being Appointed As Co-Lead Counsel and Has Brought Claims for Mom-And-Pop Policyholders as Opposed to The Large, Stranger-Owned And Trust Policyholder Investors Represented By Susman Godfrey ............ 7

D. The Court Should Appoint Co-Lead Counsel to Manage This Complex Litigation ............ 8

E. Squitieri & Fearon Has Thoroughly Investigated and Advanced the Class's Claims ............ 10

F. Squitieri & Fearon Is Highly Experienced in Handling Class Actions and Complex Litigation, and Knows the Applicable Law ............ 11

G. Squitieri & Fearon Has Committed and Will Continue to Commit the Resources Necessary to Fully Protect the Class's Interests ............ 11

H. Squitieri & Fearon Will Fairly and Adequately Represent the Interests of the Class ............ 12

CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

Cases

*Delre v. Perry*,
288 F.R.D. 241 (E.D.N.Y. 2012) ..... 7

*In re Bank of Am. Corp. Sec., Derivative and ERISA Litig*,
258 F.R.D. 260 (S.D.N.Y. 2009) ..... 7

*In re Amla Litig*,
320 F.R.D. 120, (S.D.N.Y. 2017) ..... 9

*In re Air Cargo Services Antitrust Litig.*,
240 F.R.D. 56 (E.D.N.Y. 2006) ..... 9

*In re Packaged Ice Litig.*,
No. 08-MD-01952, 2009 WL 1518428 (E.D. Mich. 2009) ..... 10

Plaintiff Yuriy Davydov respectfully submits this memorandum of law: (1) in support of his motion seeking an Order appointing Squitieri & Fearon, LLP and Susman Godfrey LLP as co-lead interim class counsel pursuant to Rule 23(g); and (2) opposing the plaintiffs' motion in *Leonard, et al. v. John Hancock Life Insurance Company, et al.*, 18-cv-04994-AKH (S.D.N.Y) ("*Leonard*") seeking to appoint Susman Godfrey LLP as sole interim lead counsel.

**INTRODUCTION**

Plaintiffs have brought these two cases challenging John Hancock's decision to increase the cost of insurance on certain universal life policies. The proposed class in each case is the same and includes the policyholders who have had their costs improperly increased by John Hancock. In cases like this, most of those policyholders, like Plaintiff Davydov (represented by Squitieri & Fearon), usually are "mom-and-pop" policyholders who own policies with modest face amounts insuring themselves or a family member. For example, Plaintiff Davydov (represented by Squitieri & Fearon) is an individual "mom-and-pop" purchaser of a $100,000 life insurance policy that he bought to insure his mother's life.

A smaller portion of the class in cases like this usually is made up of sophisticated investors who buy multi-million dollar policies for investment or estate planning purposes, often on the life of someone they do not know (called a "stranger-owned policy") or for a trust. The plaintiffs in *Leonard* (Susman Godfrey's plaintiffs) are investors who bought two very large, $10,000,000 face amount insurance policies, one of which is a stranger-owned policy and the other is held by a trust.

In an aggressive attempt to gain control of both cases for itself, Susman Godfrey followed its playbook in cases like this and filed an early motion to appoint itself as sole lead counsel for the class, a tactic that has worked for it in many cases but has previously drawn a rebuke from a

judge in this District who viewed a similar motion as "aggressive" and "unseemly"[1], as discussed below. In many of those cases, there was no challenge to Susman Godfrey's lead counsel motion, meaning that the motion was granted without opposition, allowing Susman Godfrey to lock up the case for itself very early in the litigation.

Here the tactic almost slipped by without opposition from Davydov because Susman Godfrey never served the motion in the *Davydov* case even though that case had been filed as related to the *Leonard* case and even though Susman Godfrey was seeking to be appointed lead for the same class set forth in *Davydov*. Susman Godfrey even discussed the *Davydov* case in its motion but did not serve the motion in that case. Having now seen the motion and understanding that this case and the plaintiffs' situations are different from all of the cases that Susman Godfrey cites in its motion, Davydov opposes the motion and asks the Court to appoint one firm from each case as co-lead counsel to litigate these claims. Designating interim co-lead counsel with one firm from each case will best protect the class as a whole by having counsel who represent both the mom-and-pop policyholders like the plaintiff in *Davydov* and the sophisticated, $10,000,000 institutional or trust investors like the plaintiffs in *Leonard*. These unique facts make this motion different from any of the other interim lead motions Susman Godfrey has made in other cost of insurance cases and they warrant a different result.

Davydov also asks the Court to appoint his counsel at Squitieri & Fearon as co-lead interim class counsel in order to protect the class against challenges to the propriety of Susman Godfrey serving as sole lead since Susman Godfrey is actively spearheading multiple cost-of-insurance

---

[1] *See, e.g., Brach Family Foundation, v. AXA Equitable Life Insurance Company*, Case No. 16-CV-740 (JFM) (S.D.N.Y. Nov. 13, 2017)(appointing Susman Godfrey as interim lead counsel "notwithstanding the Court's view that [Susman Godfrey's] aggressive efforts to secure appointment as interim lead counsel (efforts that began almost a year ago, well before there was an identifiable reason to appoint interim lead counsel) … have sometimes veered toward the unseemly"). That case, however, was unlike this motion because in *AXA* both sets of competing law firms represented large, sophisticated policyholders.

lawsuits for a professional plaintiff called Advance Trust, an entity that was specifically formed to pursue cost of insurance litigation and, like the plaintiffs in *Leonard*, invested in multi-million dollar stranger-owned or trust-owned policies. That plaintiff has filed at least six other cost-of-insurance class actions through Susman Godfrey and the relationship between Advance Trust and Susman Godfrey raises questions about who is driving the litigation, a question that will be relevant here as well given that the plaintiffs in *Leonard* - - like Advance Trust - - are sophisticated investors in multi-million dollar stranger–owned or trust-owned policies. Appointing Squitieri & Fearon will help protect the class here against challenges based upon the adequacy and typicality requirements of Rule 23, factors that are important to this motion.

Plaintiff Davydov therefore opposes Plaintiff Leonard's interim lead counsel motion and instead moves to appoint one law firm from each of these two related cases as co-lead interim class counsel – Squitieri & Fearon, LLP (from the *Davydov* action) and Susman Godfrey (from the *Leonard* action).

## BACKGROUND

These two cases are brought on behalf of a class of John Hancock universal life insurance policyholders who have been subjected to improper cost of insurance increases. Both cases allege that John Hancock improperly increased the costs on certain of its universal life policies in order to increase its profits and those of its parent company.[2] Plaintiffs allege that by doing so John Hancock violated the policies and damaged Plaintiffs and the hundreds or thousands of other policyholders who are subject to the increases.

[2] John Hancock profits from the increases either because the policyholders pay the higher charges (which go directly to John Hancock) or because the policyholders cancel their policies as a result of the increases (which also benefits John Hancock financially because John Hancock keeps years of premiums and is released from its liability for each policy's death benefit).

Because John Hancock improperly increased the costs on hundreds or thousands of policies, it should not be surprising that there is more than one proposed class action challenging the increases and asserting breach of contract claims against John Hancock.

Each case is at the initial stage and there has been no significant litigation yet. There has not been an initial conference with the Court in either case, no depositions have been taken, and substantive discovery has not progressed beyond some initial requests in *Leonard*.

On November 1, 2018, after Plaintiff Davydov filed his case as a related action to the *Leonard* case, Susman Godfrey moved to appoint itself as interim sole lead counsel for the class, without serving a copy of that motion on counsel for Davydov. *Leonard*, Dkt. 30. When counsel for Plaintiff Davydov found out about the proposed motion, it wrote to the Court requesting an opportunity to attend a conference with the Court and to respond to the motion. *Leonard*, Dkt. 35. The Court then scheduled a conference for November 16, 2018 at 10:30 a.m. and directed that "Counsel in both cases shall attend . . . ." *Leonard*, Dkt. No. 37. However, two days before that conference, the Court canceled the conference and directed "full briefing by the parties," "including *Leonard* counsel's . . . motion to be appointed interim class counsel and *Davydov* counsel's contemplated opposition . . . . and/or other motions regarding appointment of interim class counsel". *Leonard*, Dkt. No. 40. The Court set a schedule for briefing.

Davydov is now filing this brief in response to that Order. He opposes Susman Godfrey's attempt to be appointed as sole lead interim counsel for the class and instead moves to appoint Squitieri & Fearon, LLP and Susman Godfrey LLP as co-lead interim class counsel.

## ARGUMENT

### I. The Court Should Appoint Squitieri & Fearon as Co-Lead Interim Class Counsel

### A. Appointing Squitieri & Fearon As Interim Co-Lead Counsel Will Protect The Class By Including Counsel for "Mom-And -Pop" Policyholders and Not Putting the Litigation Solely In The Hands of Counsel Whose Only Plaintiffs Bought $10,000,000 Stranger-Owned Or Trust-Owned Policies

In cases like this, most of those policyholders, like Plaintiff Davydov (represented by Squitieri & Fearon), usually are "mom-and-pop" policyholders who own policies with modest face amounts insuring themselves or a family member. For example, Plaintiff Davydov is an individual "mom-and-pop" purchaser of a $100,000 life insurance policy that he bought to insure his mother's life.

A smaller portion of the class in cases like this usually is made up of sophisticated investors who buy multi-million dollar policies for investment or estate planning purposes, often on the life of someone they do not know (called a "stranger-owned policy") or for a trust. The plaintiffs in *Leonard* (Susman Godfrey's plaintiffs) are investors who bought two very large, $10,000,000 insurance policies, one of which is a stranger-owned policy and the other is held by a trust.

The class should not be represented solely by a firm that only has as plaintiffs sophisticated investors in two $10,000,000 stranger-owned or trust-owned policies. Instead, the Court should include counsel for the mom-and-pop policyholders like Mr. Davydov, who –as in most of these types of cases – probably will make up the majority of the class. Co-lead counsel could then together represent both types of policyholders – the sophisticated investors in stranger-owned and trust-owned policies in *Leonard* as well as mom-and-pop policyholders like

plaintiff in *Davydov*, protecting the entire class and eliminating any future arguments about the scope of the class or the loyalties of class counsel to one or another type of policyholder.

### B. Appointing Squitieri & Fearon as Interim Co-lead Counsel Will Help Protect the Class Against Issues That Will Arise From Susman Godfrey's Repeated Filing of Lawsuits For Professional Policyholder Investor Plaintiffs

Besides representing the *Leonard* plaintiffs in this cost-of-insurance litigation, Susman Godfrey has filed a flurry of cost-of-insurance cases, including multiple class actions for one plaintiff alone, an entity called Advance Trust that was specifically formed to bring cost-of-insurance litigation against insurers. Susman Godfrey has filed at least six cost of insurance cases for Advance Trust, which – like the plaintiffs in *Leonard* -- invested in multi-million dollar stranger-owned or trust-owned policies and is the named plaintiff represented by Susman Godfrey in the following cost of insurance lawsuits: *Advance Trust & Life Escrow Services, LTA, et al. v. PHL Variable Life Ins. Co.*, 18-cv-03444-PAC (S.D.N.Y.); *In re Lincoln National 2017 COI Rate Litigation*, No. 17-cv-04150-GJP (E.D. Pa) (in which Advance Trust is a plaintiff); *Advance Trust & Life Escrow Services, LTA v. Security Life of Denver Insurance Company*, No. 18-cv-01897 (D. Colo.); *Advance Trust & Life Escrow Services, LTA v. Protective Life Insurance Company*, No. 18-cv-01290-KOB (N. D. Ala.); *Advance Trust & Life Escrow Services, LTA v. North American Company for Life and Health Insurance*, Case No. 18-cv-00368 (S.D. Iowa); *Advance Trust & Life Escrow Services, LTA v. ReliaStar Life Insurance Co.*, No. 18-cv-02863 (D. Minn.).

Although Susman Godfrey may tout its involvement in those cases to support its motion, the cases actually raise the important question of who is driving the litigation for these types of investors in large, stranger-owned or trust-owned universal life insurance policies. Susman Godfrey's multiple lawsuits for one of those professional investor plaintiffs opens the firm and its

clients to adequacy and typicality challenges under Rule 23 including here where Susman Godfrey's plaintiffs also are investors in multi-million dollar stranger-owned or trust-owned policies.

This is an issue that has been unchallenged in many of the cases in which Susman Godfrey has been appointed as interim lead but it will be explored further and is relevant to Susman Godfrey's application to be appointed as interim lead counsel here. There has been no discovery in this case about the relationship between Susman Godfrey and the large stranger-owned or trust-owned policyholders that it represents in the Advance Trust cases or in this case but, no matter what that discovery ultimately shows, appointing Squitieri & Fearon as interim co-lead here protects the class and helps ensure the fairness of the process for the class in this case.

**C. Squitieri & Fearon, LLP Meets Each Requirement for Being Appointed As Co-Lead Counsel and Has Brought Claims for Mom-And-Pop Policyholders as Opposed to The Large, Stranger-Owned And Trust Policyholder Investors Represented By Susman Godfrey**

Federal Rule of Civil Procedure 23(g)(3) allows a court to appoint interim class counsel prior to certifying a class action. Appointing interim class counsel helps protect the interests of the putative class "during pre-certification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Delre v. Perry*, 288 F.R.D. 241, 247 (E.D.N.Y. 2012) (citation omitted); *accord* Manual for Complex Litigation, Fourth, § 21.11 (2004).

In determining whether to appoint interim class counsel under Rule 23(g)(3), courts normally consider the factors for appointing class counsel under Rule 23(g)(1)(A) and any other factor pertinent to the proposed interim class counsel's ability to "fairly and adequately represent the interests of the class" under Rule 23(g)(4). *In re Bank of Am. Corp. Sec., Derivative and ERISA Litig*, 258 F.R.D. 260, 271-73 (setting forth relevant factors and appointing Squitieri & Fearon

interim co-lead class counsel to prosecute ERISA-based class claims). Rule 23(g)(1)(A) requires courts to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Here, Squitieri & Fearon meets each of these requirements. Appointing Squitieri & Fearon with Susman Godfrey as co-lead interim class counsel will ensure the orderly and efficient prosecution of these claims and will protect the interests of the proposed class damaged by John Hancock's cost of insurance increases. *See* Fearon Decl. Ex. A. The class should not be represented solely by a firm that only has as plaintiffs sophisticated investors in two $10,000,000 stranger-owned or trust-owned policies. Instead, the Court should include counsel for the mom-and-pop policyholders like Mr. Davydov, who –as in most of these types of cases – most likely will make up the majority of the class.

**D. The Court Should Appoint Co-Lead Counsel to Manage This Complex Litigation**

Appointing Squitieri & Fearon as co-lead interim class counsel makes sense given the differences in the types of plaintiffs in each of the two cases, the probable make-up of the class (with most of the class most likely being mom-and-pop policyholders like Davydov instead of sophisticated investors in stranger-owned or trust-owned policies like the plaintiffs in *Leonard*), and the complexity of the litigation.

Courts are not limited to appointing one law firm as class counsel or interim class counsel, and in many cases, this Court and others have appointed two or more qualified firms to represent the class prior to and after certification, including cases involving Squitieri & Fearon. *E.g.*, *In re GlaxoSmithKline plc, et al.*, No. 10-cv-0419-AKH, Dkts. 5, 10 (S.D.N.Y. October 10, 2010)

(consolidating related class actions and appointing interim co-lead counsel in cases arising from the same facts and involving similar parties); *Taylor, et al. v. Andrew J. McCelvery, et al.*, Dkt. 06-cv-9322-AKH, Dkt. 185 (S.D.N.Y. December 3, 2009) (appointing Squitieri & Fearon as co-lead counsel); *In re Amla Litig.*, 320 F.R.D. 120, 122 (S.D.N.Y. 2017) (appointing two law firms as co-lead interim counsel). Courts recognize the need for a co-lead class counsel structure where the litigation is complicated, where the circumstances warrant it, and also recognize that a co-lead structure can often provide the best way to protect the interests of the proposed class. *See, e.g., In re Air Cargo Services Antitrust Litig.*, 240 F.R.D. 56, 57-58 (E.D.N.Y. 2006) (appointing four law firms as co-lead interim counsel because of the complexity of the case).

In other cost of insurance litigation, courts have appointed or approved co-lead counsel to represent classes of policyholders, and those law firms working together have successfully prosecuted claims on behalf of policyholders who were improperly charged similar cost increases. *See Vogt v. State Farm Life Ins. Co.*, 16-cv-4170, Dkts. 232 (W.D. Mo.) (two counsel structure); *Yue v. Conseco Life Ins. Co.*, 11-cv-9506, Dkts. 168, 183 (C.D. Cal.) (two law firm structure); *In Re Conseco Life Insurance Co.*, 3:10-md-02124, Dkt. 495, 505, and 526 (N.D. Cal) (two law firms acting as lead counsel for the class).

Here, like similar cases against large insurers, a co-lead counsel structure would provide the best means to effectively prosecute these common claims against John Hancock. Co-lead would represent both types of policyholders – the sophisticated investors in stranger-owned and trust-owned policies in *Leonard* as well as mom-and-pop policyholders like plaintiff in *Davydov*, protecting the entire class and eliminating any future arguments by Defendants about the scope of the class or the loyalties of class counsel to one or another type of policyholder. Given the challenges presented by the litigation, the likely make–up of the class, the extensive resources of

John Hancock, and the amount of work that will be necessary to properly pursue this case, a co-lead structure is appropriate. Squitieri & Fearon can effectively coordinate and prosecute this action with Susman Godfrey and the two firms, working together, will achieve the best results here.[3]

### E. Squitieri & Fearon Has Thoroughly Investigated and Advanced the Class's Claims

The first factor under Rule 23(g)(1)(A)—the work counsel has done to investigate and advance the litigation—favors appointing Squitieri & Fearon as co-lead interim class counsel. Squitieri & Fearon already dedicated substantial resources towards advancing the class's claims by extensively researching the legal basis for liability and drafting a detailed complaint. Squitieri & Fearon conducted its initial investigation of this case over a period of months beginning before Susman Godfrey filed its complaint and has devoted significant time and resources to pursuing the claims. *See* Fearon Decl. at ¶ 5; *In re Packaged Ice Litig.*, No. 08-MD-01952, 2009 WL 1518428, at *3 (E.D. Mich. June 1, 2009) (appointing interim counsel when they "have been diligently investigating their clients' and potential clients' claims, and identifying the different causes of action available in the various jurisdictions they seek to bring them."). Specifically, Squitieri & Fearon conducted several interviews with Davydov, analyzed Davydov's universal life insurance documents, analyzed John Hancock's specific force-placed insurance practices, and researched and analyzed the applicable law with respect to the claims asserted and the

[3] As set forth in the accompanying Fearon Declaration, no matter what differences Squitieri & Fearon may have with Susman Godfrey with respect to this motion, an Order appointing those firms as co-lead counsel would resolve those differences and enable Squitieri & Fearon to work cooperatively with Susman Godfrey to represent the class. This fact distinguishes this case from the *AXA* case cited above in which the relationship between the competing counsel had deteriorated to such an extent that the judge found that they could not work together without conflict. *AXA* Doc. 145 at page 1 ("there is some reason to doubt whether the two firms could work well together given what can only be described as the sniping in their respective applications.").

potential defenses. *See* Fearon Decl., ¶ 5. Accordingly, Squitieri & Fearon has shown a strong commitment to investigating and advancing the claims against John Hancock.

**F. Squitieri & Fearon Is Highly Experienced in Handling Class Actions and Complex Litigation, and Knows the Applicable Law**

Squitieri & Fearon satisfies the second factor under Rule 23(g)(1)(A)—counsel's experience handling complex litigation and class actions—because Squitieri & Fearon devotes its practice almost exclusively to class action litigation. *See* Fearon Decl. at Ex. A. Squitieri & Fearon has been appointed lead counsel or co-lead counsel by courts across the country in complex class actions and has received many commendations from courts before which it has appeared. *Id.* Squitieri & Fearon is also experienced in cost of insurance litigation and is actively prosecuting cost of insurance cases across the country, including before this Court. *See Fan v. PHL Variable Ins. Co.*, 18-cv-01288-PAC (S.D.N.Y.); *Couch v. Wilco*, 18-cv-01774-JMS-DLP (S.D. Ind.); *Fairlie v. Transamerica Life Insurance Co., et al.*, 17-cv-00 (N.D. Iowa); *McMahon v. Transamerica Life Insurance Co.*, 17-cv-00149-LTS (N.D. Iowa). Squitieri & Fearon is highly experienced in class actions, including class actions involving cost of insurance increases.

Squitieri & Fearon has also demonstrated its knowledge of the applicable law—the third factor of Rule 23(g)(1)(A). Squitieri & Fearon has filed a detailed Complaint in this case, successfully opposed motions to dismiss in other cases involving cost of insurance increases, and resolved complex procedural issues that often arise in multi-jurisdictional class actions. As a result, Squitieri & Fearon has the experience necessary to pursue the claims for policyholders here.

**G. Squitieri & Fearon Has Committed and Will Continue to Commit the Resources Necessary to Fully Protect the Class's Interests**

The final Rule 23(g)(1)(A) factor, requiring the Court to consider the resources that counsel will commit to the case, also supports appointing Squitieri & Fearon as co-lead interim class

counsel. Squitieri & Fearon is a well-established class action litigation firm that has the resources and personnel necessary to vigorously pursue a complex case of this magnitude. As demonstrated, Squitieri & Fearon's resources are not merely financial but also include substantial expertise and work-product in similar cases and other complex class actions. Squitieri & Fearon will continue to pursue this action properly and will commit the necessary resources to do so. Accordingly, Rule 23(g)(1)(A) strongly supports appointing Squitieri & Fearon as interim class counsel.

### H. Squitieri & Fearon Will Fairly and Adequately Represent the Interests of the Class

In addition to the factors under Rule 23(g)(1)(A), Rule 23(g)(4) provides that class counsel "must fairly and adequately represent the interests of the class." Although the Federal Rules of Civil Procedure do not provide specific criteria to assess fairness or adequacy under this subsection, the work already performed by Squitieri & Fearon in this case is a clear indication of its intent to fairly and adequately represent the Class. Squitieri & Fearon has and will continue to prosecute this case zealously.

Squitieri & Fearon's participation as co-lead interim class counsel in the litigation will also ensure that the interests of smaller policyholders—like Davydov, who holds a $100,000 policy—will be fairly and adequately represented. In *Leonard*, Susman Godfrey represents two policyholders who own $10 million policies, and to further complicate matters, Plaintiff PBR Partners purchased a "stranger owned" policy for investment purposes. *Leonard*, Dkt. 1 at ¶ 17.

In another recent Susman Godfrey case involving a cost of insurance increase, *Fleischer v. Phoenix Life Insurance Co.*, 11-cv-08405-CM-JF, Dkt. 97 (S.D.N.Y.), the defendants, when opposing class certification, used the multi-million dollar face amount of the plaintiff's universal life policies to challenge the superiority of a class action by arguing that the nature and size of the class members' individual interests called for individual litigation. *Id.* at 15-19. Although that

argument was ultimately unsuccessful, it shows that potential certification issues could arise due to the large universal life insurance policies owned by Susman Godfrey's clients or the potential that individual negotiations occurred between John Hancock and the *Leonard* plaintiffs when those plaintiffs initially purchased the policies at issue. Unlike the *Leonard* plaintiffs, Davydov owns a smaller "mom-and-pop" policy and his counsel should be one of the co-lead interim counsel.

Appointing Squitieri & Fearon as interim co-lead counsel also reduces the risk that the *Leonard* plaintiffs may be inadequate or atypical of other policyholders affected by John Hancock's recent increases due to potential differences between John Hancock's universal life insurance policies. Often, insurers like John Hancock will raise the cost of insurance on universal life insurance in waves, and on various insurance plans, product groups, and policy forms. At this preliminary stage, it appears *Leonard* and *Davydov* are challenging cost of insurance increases on similar John Hancock policies. However, the *Leonard* plaintiffs have not attached a copy of their policies, and discovery could reveal that their increase or policy differs from other potential class members. Although discovery will ultimately reveal which John Hancock product groups were affected by its recent cost of insurance increases and in what order, Squitieri & Fearon's participation in the case as co-lead counsel will help protect the entire class.

## CONCLUSION

For the foregoing reasons, the Court should appoint Squitieri & Fearon, LLP as co-lead interim class counsel.

Dated: November 30, 2018

Respectfully submitted,

**SQUITIERI & FEARON, LLP**

By: /s/ Stephen J. Fearon, Jr.
Stephen J. Fearon, Jr.
32 East 57th Street
12th Floor

New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553
Email: stephen@sfclasslaw.com

Joseph Santoli
**LAW OFFICE OF JOSEPH SANTOLI**
340 Devon Court
Ridgewood, New Jersey 07450
Telephone: (201) 926-9200

***Attorneys for Plaintiff Davydov***