# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LEONARD, IN HIS CAPACITY AS TRUSTEE OF THE POPLAWSKI 2008 INSURANCE TRUST; PHYLLIS POPLAWSKI; PBR PARTNERS; BRIGHTON TRUSTEES, LLC, on behalf of and as trustee for COOK STREET MASTER TRUST III; BANK OF UTAH, solely as securities intermediary for COOK STREET MASTER TRUST III; TRINITY 2015 LS FUND, LLC; PEAK TRUST COMPANY, AK, on behalf of and as trustee for SUSAN L. CICIORA TRUST and STEWART WEST INDIES TRUST; and ADVANCE TRUST & LIFE ESCROW SERVICES, LTA, as securities intermediary for LIFE PARTNERS POSITION HOLDER TRUST, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK and JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)<br><br>Defendants. | So ordered,<br>/s/<br>Alvin K. Hellerstein<br>1/19/21<br><br><br><br>Civil Action No. 18-cv-4994-AKH |

**MOTION TO MAINTAIN UNDER SEAL PORTIONS OF THE PARTIES' JOINT DISCOVERY LETTER REGARDING PRESCRIBED SUPERVISORY INFORMATION AND ATTACHED EXHIBIT A**

Pursuant to Paragraph 12 of the November 13, 2018 Court-approved Stipulated Confidentiality Agreement and Protective Order, ECF No. 39 (the "Protective Order"), and Rule 4(B) of the Individual Rules of the Honorable Alvin K. Hellerstein, Defendants John Hancock Life Insurance Company of New York and John Hancock Life Insurance Company (U.S.A.) (together, "John Hancock" or "Defendants") hereby move to maintain under seal Exhibit A to the Parties' December 23, 2020 joint discovery letter and those portions of the letter that quote

Exhibit A, as reflected in the proposed redacted version of the joint discovery letter attached as Exhibit 1 to this Motion.[1] Nothing here excuses Defendants from having to produce relevant documents requested by plaintiff, regardless of whether they also were produced to the Canadian regulator. *See* ECF No. 154.[2]

This Court previously concluded, in granting John Hancock's motion to seal portions of Plaintiffs' First Amended Complaint ("FAC") that safeguarding "prescribed supervisory information" protected from disclosure by Canada's Insurance Companies Act and implementing regulations is a "higher value" that may outweigh the public's right of access, *see* ECF No. 125 at 1-2, and that maintaining such material under seal is appropriate where the request is narrowly tailored to serve that interest, *see id.* at 3. In connection with their December 23, 2020 joint discovery letter, the Parties submitted as Exhibit A the document from which the sealed allegations in the FAC are derived—*i.e.*, the prescribed supervisory information this Court previously held should be maintained under seal, and which therefore is subject to sealing again now for the same reasons justifying the sealing of portions of the FAC. John Hancock's request to maintain that information under seal is narrowly tailored because (1) Exhibit A to the Parties' December 23, 2020 joint discovery letter consists entirely of prescribed supervisory information

---

[1] John Hancock does not move to maintain under seal Exhibit B to the Parties' December 23, 2020 joint discovery letter, nor those portions of the letter that quote Exhibit B.

[2] ECF No. 154 states: "ENDORSEMENT: The documents that Defendants seek to protect are of relatively little importance; whether the documents were disclosed to a regulator does not render the documents relevant. Provided that Defendants are not withholding relevant documents, the privilege is sustained, regardless of whether it was submitted to a foreign government. Defendants are instructed to refile the motion to maintain document under seal, ECF No. 151, to include the following language: 'Nothing here excuses Defendants from having to produce relevant documents requested by plaintiff, regardless of whether they also were produced to the Canadian regulator.' So ordered."

and therefore meets the criteria for sealing in its entirety; and (2) John Hancock requests redaction of only narrow portions of the Parties' December 23, 2020 joint discovery letter that quote Exhibit A.

John Hancock therefore respectfully requests that the Court maintain under seal Exhibit A to the Parties' December 23, 2020 joint discovery letter and those portions of the letter that quote Exhibit A, as reflected in the proposed redacted version of the joint discovery letter attached as Exhibit 1 to this Motion.

                                                   Respectfully,

Dated: January 15, 2021

/s/ Andrea J. Robinson
Andrea J. Robinson
Timothy J. Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109 USA
Tel.: (617) 526-6000
Fax: (617) 526-5000

Alan B. Vickery
John F. LaSalle III
Joseph F. Kroetsch
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
20th Floor
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for John Hancock Life Insurance Company of New York and John Hancock Life Insurance Company (U.S.A.)*

# Exhibit 1

December 23, 2020

**VIA ECF**

Judge Alvin K. Hellerstein
Room 1015
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Leonard, et al. v. John Hancock Life Ins. Co. of New York, et al.*, No. 18-cv-4994-AKH

Dear Judge Hellerstein,

Pursuant to the Court's Individual Rule 2.E, the parties jointly submit this letter requesting the Court's intervention to resolve a discovery dispute that has arisen regarding defendants' claim of privilege over Canadian prescribed supervisory information. Prior to the submission of this joint letter, counsel (Seth Ard, Ryan Kirkpatrick, and Amy Gregory for Plaintiffs and Andrea Robinson, Robert Kingsley Smith, and Ivan Panchenko for Defendants) exchanged written communications and/or discussed the issue via telephone multiple times, including on August 17, 2020, August 31 2020, and November 24, 2020.

**I.      Plaintiffs' Position:**

This case is a class action brought on behalf of owners of life insurance policies issued by defendants John Hancock Life Insurance Company of New York and John Hancock Life Insurance Company (U.S.A.) (collectively, "John Hancock USA"). In particular, the case centers on John Hancock USA's decision to increase cost of insurance ("COI") rates charged on hundreds of "Performance UL" policies that John Hancock USA issued between 2003 and 2010 (the "Subject Policies"), and its issuance of false and misleading illustrations. Plaintiffs assert claims for breach of contract and violation of various state insurance and consumer protection laws, including New York and California.

On March 27, 2020, John Hancock USA moved to seal – but *not* claw back – portions of Plaintiffs' First Amended Complaint (the "FAC") on the basis that certain paragraphs reference documents prepared for a Canadian regulator, the Office of the Superintendent of Financial Institutions (OSFI), that are thereby protected from disclosure. (*See* ECF No. 122.)  The Court granted John Hancock USA's motion two business days later (*see* ECF No. 125) before Plaintiffs filed their partial opposition, and even that partial opposition did not oppose sealing (*see* ECF No. 126).

Over four months later, John Hancock USA sought to claw back sixty-two documents related to OSFI submissions (including those referenced in the FAC) under the parties' Protective Order. John Hancock USA claims these documents are privileged "prescribed supervisory information" under Canada's Insurance Companies Act and the statute's implementing regulations.  In total, John Hancock USA has withheld over eighty documents on the basis that they contain privileged prescribed supervisory information (the "OSFI Communications"). John Hancock USA claims that the sealing order somehow gives it the right to claw back documents and shield them from

1

discovery, even though the sealing order says nothing about clawing back the documents, and John Hancock USA did not seek that relief.

In seeking to hide this evidence from discovery, John Hancock USA assumes Canadian privilege law governs discoverability of the OSFI Communications. This premise is incorrect. Under a choice-of-law analysis, Canadian privilege law is inapplicable. Because the OSFI Communications are nonprivileged under New York law, Plaintiffs request the Court compel John Hancock USA to produce the OSFI Communications improperly withheld. John Hancock USA now tries to run from this dispute being about privilege, but it has to be about privilege: John Hancock USA clawed back OSFI materials that it already produced, and the only basis in the Federal Rules and the parties' Protective Order for clawing back documents is privilege or work product. *See* Fed. R. Civ. P. 26(b)(5)(B); ECF No. 39 (¶ 19).

### A. New York Privilege Law Applies to This Discovery Dispute

This dispute concerns whether an American company can use Canadian privilege law to prohibit U.S. citizens from obtaining evidence highly relevant to their breach of contract and consumer protection claims.

Canada's Insurance Companies Act has no equivalent in the United States. Section 672.2 states that "[p]rescribed supervisory information shall not be used as evidence in any civil proceedings and is privileged for that purpose." Insurance Companies Act, S.C. 1991, c 47, s 672.2(1). "Prescribed supervisory information" is defined as "any report prepared . . . at the request of [OSFI]." *See* Supervisory Information (Insurance Companies) Regulations, SOR/2001-56, s 2(1)(d), 3.3. John Hancock USA claims the "prescribed supervisory information" privilege is equivalent to the bank examination privilege. *See infra* at 9 n.4. However, "[t]he bank examination privilege is narrow in scope and 'belongs to the regulatory authority and not to the banks that it regulates.'" *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2013 WL 2254553, at *1 (S.D.N.Y. May 22, 2013) (quoting *Bank of China v. St. Paul Mercury Ins. Co.*, No. 03 Civ. 9797(RWS), 2004 WL 2624673, at *4 (S.D.N.Y. Nov. 18, 2004)). Moreover, it only covers the regulator's "opinions and deliberative processes." *Id.* By contrast, "purely factual material falls outside the privilege." *Id.* Here, Plaintiffs are *not* seeking any internal OSFI-prepared opinions, but only John Hancock USA's own documents.

Manulife Financial Corporation ("Manulife") is John Hancock USA's Canadian-based parent holding company. (*See* ECF No. 16, John Hancock USA's Corporate Disclosure Statement.) In 2015, Manulife submitted certifications to Canada's OSFI concerning life insurance policies issued by John Hancock USA. Specifically, Manulife reported that (i) ███████████████████████████████████████████████████████████████████████ and (ii) it had not ███████████████████ (*See* Exhibit A, JH_LEONARD_000304237.) The relevance of these documents is proven by the fact that Plaintiffs quoted them in their FAC before John Hancock USA decided to claim privilege over them. (*See* FAC ¶¶ 15, 54, 61.) As set forth in that FAC, these statements are relevant evidence related to John Hancock USA's purported justification for increasing COI rates because if ████████████████████████████████████████, then the massive COI

2

increase subsequently imposed shortly thereafter was improper. John Hancock USA claims that the reports to OSFI concerned ▇▇▇▇▇▇▇▇▇▇▇▇▇ *generally*, not the Performance UL policies at issue in this case." *See infra* at 10. But evidence adduced to date reveals that a "Case Study on Performance UL products" was done in late 2015 "for OSFI." (*See* Exhibit B, JH_LEONARD_000275580.) Any claim that the OSFI Communications have "little relevance" to this litigation is contradicted by John Hancock USA's own documents.

To determine which country's privilege law applies to foreign documents, courts in the Second Circuit use the "touch base" approach developed in *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514 (S.D.N.Y. 1992). "The 'touch base' analysis typically considers [1] which country has the 'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential, unless [2] that foreign law is contrary to the public policy of this forum." *Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 489 (S.D.N.Y. 2013). "The jurisdiction with the predominant interest is either the place where the allegedly privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent." *Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 264 (S.D.N.Y. 2013).

*First*, New York has the most direct and compelling interest in the discoverability of the OSFI Communications. Although created for a Canadian regulator, the communications concern life insurance policies entered into in the United States and for policies issued by John Hancock Life Insurance Company of New York, governed by New York law. This Court has held that domestic attorney-client privilege governs a document sent between a company's in-house counsel and Korean outside counsel when the "communication relates to the prosecution of a patent application in the United States and was maintained by [the company] in its files relating to the prosecution of that patent." *Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 99 (S.D.N.Y. 2002). Similarly, although the OSFI Communications were made to a Canadian regulator, they (i) relate to the Subject Policies and (ii) are maintained in John Hancock USA's files related to those policies and located in the United States. Therefore, the communications are centered in the United States, and this forum has a direct and compelling interest in their disclosure.

*Second*, even if Canadian privilege law applied, this Canadian privilege is contrary to the public policy of the United States federal courts. Rule 26 provides for discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "Discovery rules 'are to be accorded a broad and liberal treatment [ ] to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark.'" *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 115 (1964)). The OSFI Communications are plainly relevant to John Hancock USA's decision to raise COI rates; they are thus probative as to whether the COI increase breached the terms of the Subject Policies or violated various state insurance and consumer protection laws, including New York. There is no equivalent "prescribed supervisory information" privilege in New York. Without question, these documents are nonprivileged and discoverable absent the alleged assertion of the inapplicable Canadian statutory privilege. Allowing John Hancock USA to shield highly relevant facts under a privilege created by foreign statute is contrary to this forum's interests in broad civil discovery and truth-seeking.

3

Because Canadian privilege law is inapplicable, Canada's Insurance Companies Act provides no basis to exclude the OSFI communications at trial. Although the Canadian statute states that "[p]rescribed supervisory information shall not be used as evidence in any civil proceedings," Insurance Companies Act, S.C. 1991, c 47, s 672.2(1), the Federal Rules of Evidence govern admissibility in this forum. When there is a conflict between a Federal Rule of Evidence and foreign counterpart, this Court applies the Federal Rule. *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2017 WL 4417693, at *5 (S.D.N.Y. Oct. 3, 2017) (explaining "federal courts are near unanimous, if not unanimous" that Federal Rules of Evidence are procedural); *Bakalar v. Vavra*, 550 F. Supp. 2d 548, 551 (S.D.N.Y. 2008) (holding even if a court applies foreign substantive law, it "will follow its own rules of procedure").

### B. John Hancock USA Improperly Applies a Comity Analysis

John Hancock USA now argues that rather than employ a choice-of-law analysis deciding which country's privilege law governs the discoverability of the OSFI Communications, the Court should apply a comity analysis determining whether to defer to foreign interests over the Federal Rules' liberal approach to discovery. John Hancock USA is wrong, for several reasons.

*First*, John Hancock USA ignores the applicable five-factor balancing test for a comity analysis in a discovery dispute. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 JG JO, 2010 WL 3420517, at *6 (E.D.N.Y. Aug. 27, 2010) ("The United States Supreme Court, drawing on the Restatement (Third) of Foreign Relations Law, has noted that five factors are relevant to any comity analysis of a discovery request."). Instead, it cites four facts that were relevant to the comity analysis in three cases. *See infra* at 7-8. In selectively choosing these facts, John Hancock USA overlooks what distinguishes those cases:

- Foreign Government Support for the Non-Movant. In *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, the European Commission itself was opposed to the production and submitted its views to the court in an amicus brief. 2010 WL 3420517, at *4. Similarly, in *Minpeco, S.A. v. Conticommodity Services, Inc.*, the Swiss government submitted two official statements expressing its views on Swiss banking secrecy laws and objecting to disclosure in the case. 116 F.R.D. 517, 525 (S.D.N.Y. 1987). The court also noted that compelling disclosure could trigger criminal penalties and civil sanctions. *Id.* at 526. Here, in contrast, the only entity opposing production of the relevant documents at issue is John Hancock USA.

- Undue Burden and No Relevance. *In re Commodity Exchange, Inc., Gold Futures & Options Trading Litigation* was ultimately decided on the basis that the plaintiffs sought "thousands" of individuals' account information over a "decade-long period" that was "irrelevant to the case." 2019 WL 1988525, at *5 (S.D.N.Y. May 6, 2019). Here, in contrast, Plaintiffs seek a narrow request of limited and easily identifiable, relevant communications about the COI increase at issue – many of which John Hancock *already* produced.

*Second*, John Hancock USA improperly weighs "[t]he balance of national interests, ordinarily the most important factor." *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2019 WL 1988525, at *5. Canada's OSFI may have an interest in keeping the OSFI

4

Communications confidential. *See infra* at 8-9. But "the United States also has an obvious interest in the application of federal law to discovery in its courts; compliance with federal procedural rules provides certainty and predictability to litigants in this country." *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2019 WL 1988525, at *5. Moreover, the parties' Protective Order addresses the Canadian sovereign interest in confidentiality. It ensures that even if the OSFI Communications are discoverable, they can remain confidential. For example, if the OSFI regulations are intended to prevent a "'run on the bank' scenario," *infra* at 9, the Protective Order serves as a backstop (to that exaggerated fear that John Hancock USA does not and cannot explain is actually applicable for the documents at issue here). Therefore, ordering production of the OSFI Communications subject to the Protective Order strikes the appropriate balance between the United States' and Canada's interests.

### C. The Court Has Never Previously Resolved this Discovery Dispute

John Hancock USA inaccurately claims the order granting the motion to *seal* portions of Plaintiffs' FAC somehow resolves this discovery dispute. It does not. A decision that statements quoting the OSFI Communications should be sealed from access by the public pursuant to the Protective Order does not determine whether the OSFI Communications are discoverable in the first instance. There is no "prescribed supervisory information" privilege in New York, and the Federal Rules and New York law govern the (non-existent) privilege at issue in this discovery dispute, each of which requires production of the relevant documents at issue.

\* \* \*

For the foregoing reasons, Plaintiffs respectfully request the Court order John Hancock USA to produce the OSFI Communications about the COI increase.

## II. John Hancock's Position

Plaintiffs seek an order from this Court compelling John Hancock to produce documents notwithstanding that Canada's Insurance Companies Act and implementing regulations—which Plaintiffs do not dispute apply to the documents at issue—prohibit their disclosure and use in civil proceedings. Plaintiffs' position ignores this Court's prior decision applying those prohibitions here and is based on fundamental misapprehensions concerning the nature of those prohibitions and the applicable legal standard.

The regulations implementing the Insurance Companies Act state plainly that "a company *shall not*, directly or indirectly, disclose" prescribed supervisory information. *Supervisory Information (Insurance Companies) Regulations*, SOR/2001-56, s 3 (emphasis added). The prohibitions on disclosure apply even when prescribed supervisory information is sought through discovery in ongoing civil proceedings. *See Insurance Companies Act*, S.C. 1991, c 47, s 672.2(2) ("No person shall by an order of any court, tribunal or other body be required in any civil proceedings to give oral testimony or to produce any document relating to any prescribed supervisory information."). And the Insurance Companies Act makes clear that "[p]rescribed supervisory information shall not be used as evidence in any civil proceedings." *Id.* s 672.2(1). Plaintiffs do not dispute that those proscriptions apply to the documents they seek.

5

Instead, Plaintiffs seek to sweep the plain text of the Insurance Companies Act and Supervisory Information Regulations under the rug by mischaracterizing this dispute as relating to "privilege." *Supra* at 2-4. But the question here is not whether the Court should apply an evidentiary privilege that protects one of the *parties'* interests—such as the attorney-client privilege or work product doctrine—but whether the Court should apply foreign statutory prohibitions on disclosure and use that serve the important regulatory interests of a *foreign sovereign*. As to that question, Plaintiffs' authority offers no answer. The Court therefore should deny their request.

    **A.    This Court Has Already Applied Prohibitions On Disclosure And Use Of Prescribed Supervisory Information In This Case**

As Plaintiffs acknowledge, *see supra* at 1, John Hancock moved to seal portions of Plaintiffs' First Amended Complaint because they disclose prescribed supervisory information. *See* ECF No. 122. Contrary to Plaintiffs' misleading assertion that John Hancock failed to claw back the documents it sought to maintain under seal, *supra* at 1, John Hancock had notified Plaintiffs of its intent to claw back the prescribed supervisory information *prior to moving to seal*. *See* ECF No. 122 at 4 n.4.[1] The Court granted John Hancock's motion, concluding in relevant part that the prohibitions on disclosure and use apply to the information John Hancock sought to maintain under seal. *See* ECF No. 125 at 2-3.

Plaintiffs' contention that the Court has yet to decide "*this* discovery dispute," *supra* at 5 (emphasis added), therefore overlooks what this Court *has* already done. Here, John Hancock asks this Court to do precisely what it sought in its motion to seal: recognize and apply the prohibitions on disclosure and use under Canadian law. *See* ECF No. 125 at 2-3 (describing applicable prohibitions in detail).

    **B.    Plaintiffs' Authority Is Inapposite**

Unable to contest that the Court has already addressed the key question at issue in this dispute, Plaintiffs attempt to manufacture a wholly different question. Citing cases in which courts have addressed the extent to which U.S. courts should apply domestic or foreign law concerning evidentiary privileges, Plaintiffs mistakenly suggest that the question here is whether Canadian privilege law applies. *See supra* at 2-4.[2] However, the cases on which Plaintiffs rely all involved efforts by parties to use evidentiary privileges to protect their *own* interests in safeguarding certain materials, and the question was simply which jurisdiction's law applied to protect those parties' interests. Here, by contrast, the critical question is whether, and to what extent, this Court should

---

[1] Over the ensuing months, John Hancock has engaged in extensive discussions with Canadian counsel concerning the nature and scope of the prohibitions on disclosure and use of prescribed supervisory information and carefully reviewed its production to ensure that its claw back request was tailored to the applicable law.

[2] *Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 263 (S.D.N.Y. 2013) (considering whether to apply U.S. or Dutch law of attorney-client privilege); *Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 488-89 (S.D.N.Y. 2013) (considering whether to apply U.S. or Chinese law of attorney-client privilege); *Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 98-99 (S.D.N.Y. 2002) (considering whether to apply U.S., German, or Korean law of attorney-client privilege); *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 522 (S.D.N.Y. 1992) (considering whether to apply U.S., Norwegian, German, or Israeli law of attorney-client privilege).

6

apply foreign statutory prohibitions on disclosure and use of documents essential to a *foreign power's* regulatory interest.

That question, the Second Circuit has observed, is governed by a multi-factor comity analysis derived from the Restatement (Third) of Foreign Relations Law, *see Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 139 (2d Cir. 2014)—not Plaintiffs' proposed "touch base" standard. Indeed, the very authority Plaintiffs cite demonstrates that the issues and applicable legal standards are distinct. *Compare Wultz*, 979 F. Supp. 2d at 486 (cited *supra* at 3) (applying "touch base" standard when determining whether to apply U.S. or Chinese law concerning evidentiary privileges), *with Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 459, 466-68 (S.D.N.Y. 2013) (applying comity standard when determining whether to compel production of documents prohibited from disclosure by Chinese law and granting motion to compel where documents were critical to important "U.S. interest in deterring terrorist attacks"). Accordingly, Plaintiffs' authority has no bearing on this Court's decision.

Knowing that they cannot compel production of prescribed supervisory information under the correct standard, Plaintiffs mistakenly assert that this dispute must be about "privilege" because, otherwise, John Hancock could not claw back the documents in question pursuant to the parties' Stipulated Confidentiality Agreement and Protective Order ("Protective Order"), *supra* at 2. That is a *non sequitur*. The Protective Order makes clear that it does not prohibit the parties from asserting that documents cannot be disclosed for reasons other than the attorney-client privilege and work product doctrine. *See, e.g.*, Protective Order, ECF No. 39 ¶ 21 (stating the order does "not prevent a party from arguing that certain documents are so sensitive that they should not be produced even under the Order"). That John Hancock adhered to the only "claw back" provision in the Protective Order to notify Plaintiffs that documents had been inadvertently produced says nothing about whether this Court should apply a choice-of-law or comity analysis.

### C. The Prohibitions On Disclosure And Use Preclude Production

Under the correct legal standard—the Second Circuit's multi-factor comity analysis—the Insurance Companies Act's prohibitions on disclosure and use preclude Plaintiffs' request.

The Second Circuit long ago cautioned that courts "should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures." *Ings v. Ferguson*, 282 F.2d 149, 152 (2d Cir. 1960). Heeding that guidance, courts in the Second Circuit deny motions to compel where foreign law prohibits the disclosure of the requested documents. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2010 WL 3420517, at *5, *9 (E.D.N.Y. Aug. 27, 2010) (citing *Ings* and denying motion to compel documents prohibited from disclosure by European Commission regulations); *see also In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2019 WL 1988525, at *7 (S.D.N.Y. May 6, 2019) (denying motion to compel documents prohibited from disclosure by bank secrecy laws of France and Singapore); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 529 (S.D.N.Y. 1987) (denying motion to compel documents prohibited from disclosure by Swiss bank secrecy laws). Plaintiffs do not cite even a single case to the contrary.

Courts generally conclude that it is appropriate to apply foreign prohibitions on disclosure and deny a motion to compel where:

7

- The documents were generated for use in foreign regulatory oversight, *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2010 WL 3420517, at *9 (documents generated for European Commission proceedings);

- The foreign sovereign has a strong regulatory interest in the enforcement of the prohibitions on disclosure, *see id.* (European Commission "has strong and legitimate reasons to protect the confidentiality of" requested materials because confidentiality "plays a significant role in assisting the effective enforcement of European antitrust law"); *Minpeco, S.A.*, 116 F.R.D. at 524 (Switzerland's "interest in bank secrecy is substantial," and bank secrecy laws "have the legitimate purpose of protecting commercial privacy inside and outside Switzerland");

- The discovery is sought in the U.S. in the context of a "private commercial lawsuit" that is not "infused with the public interest," *see Minpeco, S.A.*, 116 F.R.D. at 523-24 (contrasting a higher U.S. interest in compelling disclosure in suits "infused with the public interest," such as those involving "antitrust, commodities, and racketeering statutes"); *cf. Wultz*, 942 F. Supp. 2d at 468 (granting motion to compel where documents were critical to important "U.S. interest in deterring terrorist attacks"); and

- The documents and information sought are of relatively little importance to the litigation and/or are available by other means, *see In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2019 WL 1988525, at *5 (denying motion to compel where production was "likely to include enormous amounts of otherwise [protected] information that is irrelevant to the case"); *Minpeco, S.A.*, 116 F.R.D. at 529 (noting "reduced degree of importance of the requested discovery in light of" other information produced).[3]

Here, those factors weigh in favor of applying the Insurance Companies Act's prohibitions on disclosure and use.

*First*, as Plaintiffs recognize, the documents they seek were generated for submission to a Canadian regulator, not for the purpose of any U.S.-based proceedings. *See supra* at 3. Nor are the documents "maintained in John Hancock USA's files related to [the Performance UL] policies and located in the United States," as Plaintiffs claim. *See id.* Many of those documents in fact are in the custody or control of John Hancock's Canadian parent company and have been produced in this Action only because John Hancock agreed not to force Plaintiffs to obtain discovery from its corporate parent through letters rogatory.

*Second*, the prohibitions on disclosure and use are vital to the successful regulation of Canada's financial institutions because they: (1) allow Canada's Office of the Superintendent of Financial

---

[3] Plaintiffs' contentions that John Hancock has "ignore[d]" the multi-factor analysis and "selectively cho[sen]" certain factors, *supra* at 4, rings particularly hollow in light of Plaintiffs' attempt to distill that multi-factor analysis to *two* purportedly dispositive factors. In any event, the factors on which Plaintiffs focus are not dispositive or weigh in favor of applying Canada's prohibitions on disclosure and use.

8

Institutions ("OSFI") to perform its supervisory functions in a zone of total confidentiality; and (2) prevent a "run on the bank" scenario in the event that information about the poor financial health of a regulated company became public.[4] Contrary to Plaintiffs' suggestion, *supra* at 4-5, the parties' Protective Order will not safeguard those important regulatory interests. Indeed, in 2015, Canada's Parliament amended the Insurance Companies Act to underscore that prohibitions on disclosure and use of prescribed supervisory information apply to discovery in civil proceedings, abrogating a 2014 case in which the Quebec Court of Appeals adopted Plaintiffs' very argument.[5]

*Third*, the U.S. has little, if any, interest in compelling the production of protected documents in what this Court has long recognized is a private breach of contract action. *See* Tr. of Jan. 22, 2019 Hearing, ECF No. 54, at 13:16 ("We're dealing with a contract issue, it's narrow."). The authority John Hancock has cited, which Plaintiffs have failed to rebut, demonstrates that to the extent the U.S. may have a general interest "in the application of federal law to discovery in its courts," *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2019 WL 1988525, at *5, that interest is at its nadir in cases such as this one.

*Finally*, in light of the discovery John Hancock has produced to date—including unprotected material filed with U.S. regulators containing similar language—the requested documents (out of over 100,000 documents produced to date) add no value to Plaintiffs' case. That Plaintiffs referred to certain inadvertently produced prescribed supervisory information in their First Amended Complaint, *supra* at 2, does not render that information "crucial" to Plaintiffs' case. *See Minpeco, S.A.*, 116 F.R.D. at 522 (citing *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1146 (N.D. Ill. 1979) for the proposition that requested documents must be "crucial to the resolution of

---

[4] *See* Eleventh Report of the Standing Senate Committee on Banking, Trade and Commerce (June 4, 2015), https://sencanada.ca/content/sen/committee/412/banc/rep/rep11jun15-e htm (describing testimony by representative of Canada's Department of Finance that purposes of prohibitions on disclosure and use include "ensur[ing] . . . an open and frank exchange of information between financial institutions and OSFI"); Karen Howlett, *OSFI Wants Ratings Kept Secret*, The Globe and Mail (May 12, 2000), https://www.theglobeandmail.com/report-on-business/osfi-wants-ratings-kept-secret/article18423100 (quoting then-Superintendent of Financial Institutions John Palmer as supporting prohibitions on disclosure because, if information became public, "[y]ou might get a run on those institutions, putting them out of business").

Contrary to Plaintiffs' suggestion that there is "no equivalent in the United States" to the prohibitions on disclosure and use, *supra* at 2, they serve similar purposes to the well-recognized bank examination privilege, which "arises out of the practical need for openness and honesty between bank examiners and the banks they regulate, and is intended to protect the integrity of the regulatory process by privileging such communications." *Sharkey v. J.P. Morgan Chase & Co.*, 2013 WL 2254553, at *1 (S.D.N.Y. May 22, 2013) (internal quotation mark omitted). And, contrary to Plaintiffs' assertion, the documents Plaintiffs seek are not "purely factual material"; they reveal OSFI's "opinions and deliberative processes" concerning the information and materials OSFI identified as necessary for the exercise of its oversight role, the very sort of information precluded from disclosure by the bank examination privilege. *See supra* at 2 (quoting *Sharkey*, 2013 WL 2254553, at *1).

[5] *See* Patrick Plante, *Amendments Expressly Ban Judicial Disclosure of Information Excange Between Financial Institutions and OSFI*, Borden Ladner Gervais LLP, https://www.blg.com/en/insights/2016/02/amendments-expressly-ban-judicial-disclosure-of-information-exchange-between-financial-institutions (Feb. 22, 2016) (describing case and amendment to Insurance Companies Act, and observing that "Parliament moved quickly to shut the door to the judicial disclosure of prescribed supervisory information"); *see also Economic Action Plan 2015 Act*, No. 1, S.C. 2015, c. 36, s. 236 (adding Section 672.2 to the Insurance Companies Act); *Société financière Manuvie c. D'Alessandro*, 2014 QCCA 2332 (Can.).

a key issue in the litigation"). Far from containing "highly relevant facts," *see supra* at 3, or information "about the COI increase," *id.* at 5, many of the documents that Plaintiffs seek concern matters that have little relevance to this Action, including wholly unrelated John Hancock products.

Plaintiffs are wrong that John Hancock's "own documents" prove otherwise, *supra* at 3. The only document Plaintiffs cite that is actually at issue here, *see id.* at 2, concerns ▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ *generally*, not the Performance UL policies at issue in this case (which comprise a small fraction of John Hancock's business) specifically. And Plaintiffs' citation to an unredacted document referencing a contemplated "case study" involving the Performance UL products, *id.* at 2-3, is both misleading and irrelevant. Plaintiffs fail to disclose that, unlike the documents they seek, the contemplated "case study" was for "OSFI and MCCSR [*i.e.*, Minimum Continuing Capital and Surplus Requirements] *purposes*," JH_LEONARD_000275580 (emphasis added), not for OSFI at its request. Any such "case study" undertaken on John Hancock's own initiative would not constitute prescribed supervisory information. Moreover, the contemplated "case study" is not mentioned in any of the documents John Hancock has withheld from production or clawed back—as Plaintiffs well know, having had the opportunity to review unredacted versions of a substantial majority of those documents. Accordingly, had such a "case study" been undertaken, it would have no bearing on whether the documents *Plaintiffs seek* should be produced.

For these reasons, John Hancock respectfully requests that the Court deny Plaintiffs' request.

Respectfully,

| | |
|---|---|
| /s/ Seth Ard | /s/ Andrea Robinson |
| Seth Ard | Andrea Robinson |
| **SUSMAN GODFREY L.L.P.** | **WILMER CUTLER PICKERING** |
| 1301 Avenue of the Americas | **HALE AND DORR LLP** |
| 32nd Floor | 60 State Street |
| New York, NY 10019 | Boston, MA 02109 |
| Tel.: (212) 336-8330 | Telephone: (617) 526-6000 |
| Fax: (212) 336-8340 | Facsimile: (617) 526-5000 |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

10