**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY LEONARD, IN HIS CAPACITY AS TRUSTEE OF THE POPLAWSKI 2008 INSURANCE TRUST; PHYLLIS POPLAWSKI; PBR PARTNERS, BRIGHTON TRUSTEES, LLC, on behalf of and as trustee for COOK STREET MASTER TRUST III; BANK OF UTAH, solely as security intermediary for COOK STREET MASTER TRUST III; PEAK TRUST COMPANY, AK, on behalf of and as trustee for SUSAN L. CICIORA TRUST and STEWART WEST INDIES TRUST; and ADVANCE TRUST & LIFE ESCROW SERVICES, LTA, as securities intermediary for LIFE PARTNERS POSITION HOLDER TRUST, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK and JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>                    Defendants. | Civil Action No. 18-cv-04994-AKH |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL AND CLASS CERTIFICATION**</u>

## TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................3

    A.     Plaintiffs Challenge COI Overcharges.......................................................3

    B.     Plaintiffs Engage in 3.5 Years of Discovery..............................................4

    C.     Settlement Negotiations .............................................................................5

    D.     The Settlement Agreement .........................................................................6

        1.     Consideration and Settlement Class.................................................6

        2.     Release, Payments, and Opt-Outs....................................................7

        3.     Award, Costs, and Fees....................................................................8

        4.     Notice and Plan of Allocation..........................................................8

III.   ARGUMENT ........................................................................................................10

    A.     The Proposed Settlement Warrants Preliminary Approval.......................10

        1.     The Settlement is Procedurally Fair...............................................11

        2.     The Settlement is Substantively Fair .............................................13

        3.     The Plan of Allocation Treats Class Members Equitably..........................20

        4.     The Proposed Settlement Satisfies Other Relevant Factors......................21

        5.     Conclusion .....................................................................................22

    B.     The Settlement Class Warrants Preliminary Certification.....................................22

        1.     The Settlement Class Meets the Requirements of Rule 23(a) .................23

        2.     The Settlement Class Meets the Requirements of Rule 23(b)(3) .............25

        3.     Proposed Class Counsel Satisfy Rule 23(g) and the Class Representatives Are Proper..........................................................28

        4.     Conclusion .....................................................................................28

C.      Notice to the Class ................................................................................28

D.      The Proposed Distribution Plan is Reasonable ......................................31

E.      Proposed Schedule ................................................................................32

IV.    CONCLUSION..................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advance Tr. & Life Escrow Servs., LTA v. Sec. Life of Denver Ins. Co.*,
   No. 1:18-cv-01897(DDD)(NYW), 2021 WL 62339 (D. Colo. Jan. 6, 2021)........................25

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-1775 (JG)(VVP), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ........................16

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)....................................................................................................24

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...........................................................................................................24, 28

*In re AOL Time Warner, Inc.*,
   No. 02-cv-5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)......................................20

*In re AXA Equitable Life Ins. Co. COI Litig.*,
   No. 16-CV-740 (JMF), 2020 WL 4694172 (S.D.N.Y. Aug. 13, 2020)...............................23, 25

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................................................15

*Brooklyn Ctr. for Indep. for the Disabled v. Bloomberg*,
   290 F.R.D. 409 (S.D.N.Y. 2012) .............................................................................................22

*In re Buspirone Patent Litig.*,
   210 F.R.D 43 (S.D.N.Y. 2002) ................................................................................................26

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012)................................................................................16, 28

*Christine Asia Co. v. Yun Ma*,
   No. 15-md-02631(CMS)(DA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).................10, 11

*City of Detroit v. Grinnell Corporation*,
   495 F.2d 448 (2d Cir. 1974)......................................................................................... *passim*

*Claridge v. N. Am. Power & Gas, LLC*,
   2016 WL 7009062 (S.D.N.Y. Nov. 30, 2016).......................................................................23

*Cordes & Co. Fin Servs. V. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007).....................................................................................................11

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................14

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 01-mdl-1409 (WP), 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ...............................16

*D'Alauro v. GC Servs. Ltd. P'ship*,
    168 F.R.D. 451 (E.D.N.Y. 1996) ......................................................26

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)......................................................12

*In re Doria/Memon Disc. Stores Wage & Hour Litig.*,
    No. 14-cv-7990 (RWS), 2017 WL 4541434 (S.D.N.Y. Oct. 10, 2017) ...............................28

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)......................................................24

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (E.D.N.Y. 2008) ......................................................25

*Feller v. Transamerica Life Ins. Co.*,
    No. 2:16-cv-01378 (CAS)(AJW), 2017 WL 6496803 (C.D. Cal. Dec. 11,
    2017) ......................................................25

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)......................................................24

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-cv-8405 (CM), 2013 WL 12224042 (S.D.N.Y. July 12, 2013) .....................22, 23, 24

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ......................... *passim*

*In re Global Crossing Secs. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................11, 21

*Gonzales v. Agway Energy Servs., LLC*,
    No. 5:18-cv-235(MAD)(ATB), 2018 WL 5118509 (N.D.N.Y. Oct. 22, 2018) ...............15, 26

*Grenawalt v. AT & T Mobility, LLC*,
    No. 11-cv-2664 (ALC), 2014 WL 4832318 (S.D.N.Y. Sept. 29, 2014)................................22

*Hanks v. Lincoln Life & Annuity Co. of New York*,
    330 F.R.D. 374 (S.D.N.Y. 2019) ......................................................25

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-cv-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................17

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    No. 14-MD-2542 (VSB), 2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020) ..............................29

*Larson v. John Hancock Life Ins. Co.*,
    No. RG16 813803, 2017 WL 4284163 (Cal.Super. Mar. 23, 2017)..................................23, 25

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................................................30

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .......................................................................30

*McReynolds v. Richards–Cantave*,
    588 F.3d 790 (2d Cir. 2009)...................................................................................................11

*Meek v. Kansas City Life Ins. Co.*,
    19-cv-472 (W.D. Mo.) ............................................................................................................17

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................................................18, 19

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    No. 06-cv-4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .................................18

*In re Namenda Direct Purchaser Antitrust Litig.*,
    331 F. Supp. 3d 152 (S.D.N.Y. 2018)....................................................................................21

*In re Nigeria Charter Flights Contract Litig.*,
    233 F.R.D. 297 (E.D.N.Y. 2006) ...........................................................................................26

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................................................30

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................13, 17, 21

*Puddu v. 6D Glob. Techs., Inc.*,
    No. 15-cv-8061 (AJN), 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ...........................11, 18

*Rivera v. Harvest Bakery Inc.*,
    312 F.R.D. 254 (E.D.N.Y. 2016) ...........................................................................................26

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)...................................................................................................26

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)...................................................................................................23

*State of W. Va. v. Chas. Pfizer & Co.*,
     314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ...............................14

*Steinberg v. Nationwide Mut. Ins. Co.*,
     224 F.R.D. 67 (E.D.N.Y. 2004) ......................................................................................23, 25

*In re Sumitomo Copper Litig.*,
     189 F.R.D. 274 (S.D.N.Y. 1999) .........................................................................................10

*Surdu v. Madison Glob., LLC*,
     No. 15-cv-6567 (HBP), 2017 WL 3842859 (S.D.N.Y. Sept. 1, 2017) ...................................23

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
     283 F.R.D. 199 (S.D.N.Y. 2012) .........................................................................................22

*U.S. v. New York*,
     No. 13-CV-4165 NGG MDG, 2014 WL 1028982 (E.D.N.Y. Mar. 17, 2014).......................29

*Vogt v. State Farm Life Ins. Co.*,
     No. 2:16-CV-04170-NKL, 2018 WL 1955425 (W.D. Mo. Apr. 24, 2018),
     *aff'd*, 963 F.3d 753 (8th Cir. 2020).......................................................................................25

*Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338 (2011).............................................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
     396 F.3d 96 (2d Cir. 2005)........................................................................................10, 21, 28

*In re Warner Chilcott Ltd. Sec. Litig.*,
     No. 06-cv-11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) .............................13

## Other Authorities

Individual Rule 2.E ............................................................................................... *passim*

Leslie Scism, "Covid Spurs Biggest Rise in Life-Insurance Payouts in a Century,"
     *Wall Street Journal* (Dec. 9, 2021) .........................................................................................2

Rule 23 ............................................................................................................................ *passim*

Rule 30(b)(6)....................................................................................................................4

Tom McParland, "'Small Steps': Attorneys Welcome SDNY's Easing of COVID-
     19 Restrictions, But Say Return to Normal Remains Elusive," *New York Law
     Journal* (June 15, 2021 at 6:31 PM) ......................................................................................14

Plaintiffs, as individuals and on behalf of the class of policy owners proposed to be certified for purposes of settlement, have entered into a Settlement with John Hancock Life Insurance Company of New York and John Hancock Life Insurance Company (U.S.A.) ("Defendants" or "Hancock").[1]  Plaintiffs respectfully move under Rule 23 for an order:

- Preliminarily approving the Settlement and distribution plan;

- Preliminarily certifying the Settlement Class and appointing Plaintiffs as Class Representatives and Susman Godfrey L.L.P. as Class Counsel for purposes of the Settlement;

- Approving the form and manner of notice to the Settlement Class, directing notice under Rule 23(e)(1); and

- Scheduling a final approval hearing at which the Court will consider final approval of the Settlement, final approval of the distribution plan, and Class Counsel's motion for fees and costs

The Settlement, if approved, will conclude this class litigation in its entirety.

## I.   <u>INTRODUCTION</u>

After litigating this exceptionally complex case for three-and-a-half years, on the eve of the close of discovery, Plaintiffs negotiated an extraordinary settlement that entitles the Class to **91.25%** of all COI overcharges collected by Hancock from the Class Policies through August 31, 2021.  This hard-fought result was reached with the help of a highly respected mediator, former Magistrate Judge James ("Jay") Francis, who calls the Settlement an "excellent result." Declaration of Hon. James C. Francis IV (Ret.) In Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Francis Decl.") ¶ 8.

The proposed Settlement was reached after the completion of extensive party discovery, third-party discovery, depositions, actuarial modeling, economic analysis, meet and confers,

---

[1] Unless otherwise noted, all Capitalized Terms mean the same as in the Settlement Agreement.

motions to compel, document review, and economic analysis. The Settlement will provide extensive cash and other benefits to Class Members many years before Plaintiffs could have obtained any recovery at trial. The checks will be mailed directly to Class Members, using the addresses in Defendants' files, with no need to fill out claims forms, and with no possibility of reversion to Defendants.

The non-monetary benefits also are highly substantial.  First, Hancock is agreeing to a complete freeze on any new COI increase for at least the next five years, which is a very significant concession in a pandemic era where life insurance death benefit claims are skyrocketing.[2]  Second, Hancock is giving up its right to challenge the validity of class policies for misrepresentations in the policy application and for alleged lack of insurance interest.  In a prior challenge to cost-of-insurance ("COI") overcharges brought against Phoenix Life Insurance Company, on final approval, Judge McMahon adopted an expert valuation of similar non-monetary terms at $94.3 million, and Plaintiffs here will submit expert valuation of such terms on final approval as well.  *See Fleisher v. Phoenix Life Ins. Co*., No. 11-cv-8405 (CM), 2015 WL 10847814, at *11 (S.D.N.Y. Sept. 9, 2015) ("*Phoenix COI*") (adopting valuation of 5-year COI rate freeze at $61 million, and the valuation of a policy validity guarantee at $33.3 million).

On preliminary approval, the question is whether the Court "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  The proposed Settlement easily passes both tests.

---

[2] *See* Leslie Scism,  "Covid Spurs Biggest Rise in Life-Insurance Payouts in a Century," *Wall Street Journal* (Dec. 9, 2021), *available at* https://www.wsj.com/articles/covid-spurs-biggest-rise-in-life-insurance-payouts-in-a-century-11639045802 ("The Covid-19 pandemic last year drove the biggest increase in death benefits paid by U.S. life insurers since the 1918 influenza epidemic.").

## II.    BACKGROUND

### A.    Plaintiffs Challenge COI Overcharges

Seven proposed class representatives ("Plaintiffs") have prosecuted this case: (i) Jeffrey Leonard, in his capacity as Trustee of The Poplawski 2008 Insurance Trust; (ii) Phyllis Poplawski; (iii)  PBR Partners; (iv) Brighton Trustees, LLC, in its capacity as trustee for the Cook Street Master Trust III; (v) Bank of Utah, as securities intermediary for the Cook Street Master Trust III; (vi) Peak Trust Company, AK, as trustee for the Susan L. Ciciora Trust and the Stewart West Indies Trust; and (vii) Advance Trust & Life Escrow Services, LTA, as securities intermediary for Life Partners Position Holder Trust.

Each Plaintiff (and each Class Member) owns or has owned at least one Performance Universal Life ("PUL") policy issued by Hancock between 2003 and 2010.  Each PUL policy requires that Hancock's cost-of-insurance ("COI") charge be either: "based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions" or "based on our expectations of future investment earnings, persistency, mortality, expense and reinsurance costs and future tax, reserve, and capital requirements."  Dkt. 167 ¶ 2.

In May 2018, Hancock announced that it was raising the cost of insurance rates for about 1,500 policies held by policy owners throughout the country.  On June 5, 2018, Plaintiffs challenged the rate hike in this putative class action.

On January 22, 2019, the Court appointed Susman Godfrey L.L.P. Interim Class Counsel under Rule 23(g).  Dkt. 52.  Susman Godfrey is highly experienced in representing classes of policyowners seeking recovery of COI overcharges against insurers, including Phoenix, AXA Equitable Life Insurance Company, Voya Life Insurance Company, and Security Life of Denver

Insurance Company.  Declaration of Seth Ard In Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Ard Decl.") ¶ 3.

### B.     Plaintiffs Engage in 3.5 Years of Discovery

Plaintiffs have vigorously prosecuted this case for over 3.5 years.  Plaintiffs and their experts analyzed nearly one million pages of documents, which included extensive actuarial tables, policy-level data reflecting the historical credits and deductions to the account value of all Class Members' policies, and thousands of spreadsheets.  Ard Decl. ¶ 9.  Plaintiffs purchased a license (at a cost of $50,000 per year) necessary to access the proprietary software AXIS, in order to review Hancock's extremely complex actuarial models.  *Id*.  Plaintiffs also issued eight subpoenas to Defendants' reinsurers and actuarial and financial advisors. *Id.* ¶ 10. Plaintiffs obtained thousands of pages of valuable documents from these subpoenas, much of which had not previously been produced by Hancock.  *Id*.

Plaintiffs took and defended 23 highly technical depositions (many of which took place over two days).  Representatives of six of the seven Plaintiffs were deposed.  All of these depositions were taken virtually during the COVID-19 pandemic, and, therefore, required numerous hours of additional coordination.  Ard Decl. ¶ 11.

Plaintiffs filed five motions to compel, four of which were granted or granted in substantial part.  Dkts. 57, 81, 99, 149, 177.  In an effort to avoid further burdening the Court, the parties met and conferred numerous times (with many meetings lasting two or more hours) resolving other discovery disputes concerning both parties' Rule 30(b)(6) notices, Hancock's 220-page privilege log, and many of the parties' discovery requests. In total, Plaintiffs issued 83 requests for production, 25 interrogatories, and 298 requests for admission, and Defendants issued 174 requests for production, 152 interrogatories, and 1,124 requests for admission.  Ard Decl. ¶ 12.  With respect to Plaintiffs' 30(b)(6) notice alone, Plaintiffs spent over 20 hours

meeting and conferring with Defendants. *Id.* Per the Court's Individual Rule 2.E, the parties exchanged drafts of thirteen additional joint letters that were never filed with the Court after the parties ultimately negotiated compromise solutions. *Id.*

Under the Court's scheduling order, discovery expired on November 19, 2021, and Plaintiffs were required to file their opening expert reports on January 20, 2022.   Dkt. 192. Plaintiffs anticipated moving for class certification in 2022, and Defendants indicated that they anticipated filing motions for summary judgment after resolution of class certification.   Ard Decl. ¶ 13.

        **C.**      **<u>Settlement Negotiations</u>**

The parties held an in-person mediation in front of Judge Francis on August 26, 2021 in Manhattan, after exchanging detailed mediation position statements and supplemental, updated discovery.  Francis Decl. ¶ 6; Ard Decl. ¶ 6.  The parties were unable to reach agreement at that in-person mediation. Francis Decl. ¶ 7; Ard Decl. ¶ 6. The parties continued to negotiate with the assistance of Judge Francis, and, nearly eight weeks later, reached a memorandum of understanding for a settlement, and promptly informed the Court of the development.  Dkt. 193; Francis Decl. ¶ 7; Ard Decl. ¶ 6.  A long-form settlement agreement was negotiated and agreed to thereafter. Ard Decl. ¶ 6.

Throughout the process, the Settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length.  Francis Decl. ¶¶ 4, 8; Ard Decl. ¶¶ 3-7. Negotiations were hard-fought and non-collusive.  *Id.*  Armed with knowledge gained from 3.5 years of discovery, Class Counsel analyzed all of the contested legal and factual issues to thoroughly evaluate Defendants' contentions, advocated in the settlement negotiation process for a fair and reasonable settlement that serves the best interests of the Class, and made fair and reasonable settlement demands of Defendant.   Ard Decl. ¶ 8; Francis Decl. ¶¶ 4, 8.   Judge

Francis believes that the proposed Settlement is an "excellent result" for members of the proposed class.  *See* Francis Decl. ¶ 8.

D.   **The Settlement Agreement**

1.   Consideration and Settlement Class

For the Class, the Settlement awards four main benefits:

1. **CASH:** A cash Settlement Fund of up to **$123,074,128.32** which is equal to **91.25%** of all COI overcharges collected by Hancock from the Class Policies through August 31, 2021.  "COI overcharge" refers to the amount a Settlement Class member paid in COI charges in excess of what she would have paid had Hancock not implemented the COI increase (the "Policy Settlement Amount"). For any policy that opts out, the Settlement Fund is reduced by the Policy Settlement Amount for that policy.

2. **CLASS RATE INCREASE FREEZE:** A total and complete freeze on any new cost of insurance ("COI") increase for a period of five years following Final Approval of the Settlement. Thus, even if Hancock has a future change in expectations that would otherwise permit a COI rate increase under the terms of the policies, including as a result of any spike in mortality experience resulting from the COVID-19 pandemic, Hancock will not increase COI rates for 5 years. Policyholders now have the ability to predict, with certainty, what their COI obligations will be for a substantial period of time.

3. **RATE FREEZE MOST-FAVORED-NATION ("MFN") CLAUSE:** If Hancock agrees to a rate freeze that is longer than five years with any owner of an opt-out or Excluded Policy, then Hancock shall extend the duration of the Class Rate Increase Freeze so that it is as long as provided under that agreement.

4. **VALIDITY CLAUSE:** Hancock has agreed not to challenge the validity and enforceability of any eligible policies owned by participating Class members on the grounds of lack of an insurable interest or misrepresentations in the application for such policies.

Ard Decl. ¶ 15; *see also* Ard Decl., Ex. 2 (Settlement Agreement).

The Settlement defines the Settlement Class as "all Owners of Class Policies," which refers to all current and former owners of "any universal life policy" that Hancock issued that was "subjected to the 2018/2019 Performance UL cost of insurance rate increase."  Settlement Agreement §§ 1.7, 1.46.  Class Policies do not include: (1) policies at issue in the Individual

Actions, most of which are pending before this Court, and (2) policies whose owners previously reached settlements with Hancock.[3] *Id.* § 1.16, 1.24.

        2.      <u>Release, Payments, and Opt-Outs</u>

Class Members will have 45 days after notice is sent to exclude themselves from the Class by sending a letter to the Settlement Administrator.  Settlement Agreement § 6.1. The Settlement Fund will be reduced proportionately if there are any opt-outs, based on the amount of COI overcharges paid by the opt-outs compared to the rest of the Class.  *Id.* § 2.1(c).

Upon final approval, the Settlement Administrator will distribute to Final Settlement Class Members their Policy Settlement Amounts, which represent their *pro rata* shares of the Net Settlement Fund.  Ard Decl. ¶ 17; Ard Decl., Ex. 3 ("Plan of Allocation"). The Net Settlement Fund consists of the Final Settlement Fund, less the fees incurred by the Settlement Administrator, other fees incurred in administering the class notice and Settlement, any Incentive Award, and any of Class Counsel's Fees and Expenses approved by the Court.  Settlement Agreement § 1.26.

The checks will be sent *automatically* to Final Settlement Class Members using Hancock's database of their addresses without requiring any Final Settlement Class Member to submit claim forms.  Settlement Agreement § 2.3(b); *see also* Declaration of Gina M. Intrepido-Bowden on Proposed Notice Plan ("Intrepido-Bowden Decl.") Ex. B (proposed long-form notice) at 7; Ex. C (proposed short-form notice) at 1. This is not a claims-made settlement, so

---

[3] The Individual Actions refer to: (i) *Davydov v. JHNY and JHUSA*, 18-cv-09825 (S.D.N.Y.); (ii) *Twin Lakes and Lakewood Holdings v. JHNY and JHUSA*, 655429/2018 (N.Y. Sup. Ct.); (iii) *LSH and Wells Fargo v. JHNY and JHUSA*, 19- cv-1009 (S.D.N.Y.); (iv) *Lipschitz et al. v. JHNY*, 655579/2019 (N.Y. Sup. Ct. ); (v) *VICOF II Trust et al. v. JHNY*, 19-cv-11093 (S.D.N.Y.); (vi) *Wells Fargo v. John Hancock Life Insurance Company (U.S.A.)*, 20-cv-5032 (S.D.N.Y.); (vii) *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. JHNY and JHUSA*, 650452/2021

none of the settlement funds will revert to Hancock.  Settlement Agreement § 2.2(d); Ard Decl. ¶ 16..

Plaintiffs and Final Settlement Class Members will release any and all claims that were or could have been asserted in the Action arising out of the facts alleged in the Action. Settlement Agreement § 1.40. The release excludes claims that could not have been asserted in this Action that arise out of any future COI increase.  *Id.* §§ 1.15, 1.40.

3.   Award, Costs, and Fees

The Settlement Agreement provides that, subject to Court approval, a portion of the Final Settlement Fund may be used for fees incurred in administering class notices and Settlement. Hancock also has agreed to pay up to $100,000 for Publication Notice Expenses on top of the Final Settlement Fund.  Settlement Agreement § 7.5. The Settlement Agreement provides that Plaintiffs will move for attorneys' fees not to exceed 33% of the value of the benefits provided by the Settlement to the Final Class Members and for reimbursement for all expenses incurred or to be incurred.  *Id.* § 7.1. The Settlement also provides that Plaintiffs may request Incentive Awards for up to $25,000 per Plaintiff, to be paid from the Final Settlement Fund, for their services as representatives on behalf of the Class.  *Id.* § 7.3.

Class Counsel will file a motion seeking reimbursement of their costs, fees, and incentive awards, which will be proposed to be scheduled to be heard at the same time as the final approval hearing. Class members will be given an opportunity to object to that application prior to the final approval hearing.

4.   Notice and Plan of Allocation

---

(N.Y. Sup. Ct.); and (viii) all actions consolidated with (v) pursuant to the Court's Oct. 14, 2021 Order (19-cv-11093, Dkt. 99).

The proposed plan of allocation, attached as Exhibit 3 to the Ard Declaration, distributes proceeds equitably on a *pro rata* basis.  Class members will not need to fill out claim forms. Money will be sent to them automatically in the mail, using the addresses that Hancock maintains on file.  Settlement Agreement § 2.3(b). Each Class Member's *pro rata* share will represent 91.25% of the total overcharges paid by that Class Member as of August 31, 2021. Settlement Agreement §§ 1.38, 2.1(b). Those overcharges will represent the difference between the COI charges Hancock actually assessed on the policy after implementation of the COI increase through August 31, 2021 and the amount that Plaintiffs contend Hancock should have assessed. Ard Decl. ¶ 15.  All in-force policies will also benefit from the guarantee of policy validity and the five-year COI freeze and MFN clause. Settlement Agreement § 3; Ard Decl. ¶ 15.

Plaintiffs request that the Court appoint JND Legal Administration LLC ("JND") as Settlement Administrator.  Within five business days of this Court's order granting the motion for preliminary approval, Hancock will provide JND with a list of owner-address information that is available from Hancock's files.  Settlement Agreement § 2.2.  Within 30 days of the Court's order, JND will mail the long-form notice attached as Exhibit B to the Intrepido-Bowden Declaration to all addresses on the list from Hancock. Settlement Agreement § 5.1; Intrepido-Bowden Decl. ¶¶ 24-27. JND will also post a copy of the long-form notice to a website (which will also provide other relevant information about the settlement), and will establish and maintain an automated toll-free number that Class Members may call to obtain information about the litigation. Intrepido-Bowden Decl. ¶¶ 30-33. JND will post a copy of the short-form notice attached as Exhibit C to the Intrepido-Bowden Declaration in *USA Today*, *The New York Times*,

and *The Financial Times*, and will distribute the short-form notice through a press release distributed over the *PR Newswire* internet wire service.  Intrepido-Bowden Decl. ¶¶ 28-29.

To the extent there are conflicting elections of owners as it relates to a Class Policy, including any election that purports to split or divide exclusion from or participation in the Settlement Class with respect to the same Class Policy, or to the extent the parties or their respective counsel have concerns regarding the ownership rights of settlement class members, the settlement agreement contemplates that the Court will resolve all disputes or issues regarding ownership of a policy or exclusion of a class policy. Settlement Agreement § 6.4. The Settlement Agreement requires all issues relating to conflicting elections or challenges to ownership to be brought to the Court's attention within 30 days after the close of the opt-out period. Settlement Agreement § 6.4.Within 30 days after the Final Settlement Date, the Settlement Administrator will calculate each Final Settlement Class Member's distribution pursuant to the plan of allocation and, within 14 days after that, send for delivery to each Final Settlement Class Member, via first-class postage prepaid, a settlement check in the amount of the share of the Net Settlement Fund to which the Final Settlement Class Member is entitled.  Settlement Agreement § 2.3(b); *see also* Plan of Allocation. Within one year plus 30 days after the date the Settlement Administrator mails settlement checks, the Settlement Administrator will mail additional checks to distribute any funds on a *pro rata* basis remaining in the Settlement Fund to those that cashed their checks in the first distribution, subject to the economic and administrative feasibility of mailing such additional checks. *Id.*; Plan of Allocation.

## III.    ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval

A class action settlement is subject to court approval under Rule 23(e).  "Settlement approval is within the Court's discretion, which should be exercised in light of the general

judicial policy favoring settlement." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (cleaned up). The settlement of complex class action litigation is strongly favored. The Second Circuit is "mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (cleaned up). Absent "fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Christine Asia Co. v. Yun Ma*, No. 15-md-02631(CMS)(DA), 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).

There are two steps to approval: preliminary and final approval. *See* Fed. R. Civ. P. 23(e). At preliminary approval, the Court must assess whether it "will likely be able to approve the proposal" under the four factors enumerated by Rule 23(e)(2): (A) "the class representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate," after accounting for (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)"; and (D) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The first two factors focus on "procedural fairness," while the latter two factors (and associated subfactors) focus on "substantive fairness." *Christine Asia*, 2019 WL 5257534, at *9–10.

1.   The Settlement is Procedurally Fair

11

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B).  In assessing adequacy of representation, the court focuses on whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. V. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).  Where an experienced class counsel has negotiated an arm's length agreement after "meaningful discovery," a "presumption of fairness, reasonableness, and adequacy" attaches. *McReynolds v. Richards–Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (citation omitted); *Christine Asia*, 2019 WL 5257534, at *9.  That presumption also applies "when a settlement is reached with the assistance of a mediator." *Puddu v. 6D Glob. Techs., Inc.*, No. 15-cv-8061 (AJN), 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021).  Here, the presumption of fairness, reasonableness, and adequacy applies.

Plaintiffs' interests are aligned with the remainder of the Settlement Class: each suffered the same injury (improper cost-of-insurance overcharges) and have the same interest in maximizing recovery from Hancock. *See In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004). ("There is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *see also* 1 Newberg on Class Actions § 3:58 (5th ed. 2021) ("Adequacy does not require complete identity of claims or interests between the proposed representative and the class.  All that is required—as the phrase 'absence of conflict' suggests—is sufficient similarity of interest such that there is no affirmative antagonism between the representative and the class." (citations omitted)).

Class Counsel is highly qualified.  They have represented classes in numerous other COI challenges, including against Phoenix, AXA, Voya, and Security Life of Denver, are highly experienced in the prosecution of contract and insurance litigation, and are also of the view that the Settlement is an excellent result. Ard Decl. ¶¶ 3-4, 16, 18.  Class Counsel's view as to the fairness of the settlement is well informed: over 3.5 years of discovery, Class Counsel reviewed nearly a million pages of documents, took or defended 23 depositions, worked extensively with highly qualified actuarial and economic consultants and experts, and briefed numerous additional motions.  Ard Decl. ¶ 11.

The agreement was also reached at arm's length.  Class Counsel negotiated the settlement over nearly two months with Defendants, including at an all-day in-person mediation session in New York supervised by a highly experienced, respected, and neutral mediator.  *See* Ard Decl. ¶ 5-6; Francis Decl. ¶¶ 6-7.  As Judge Francis has opined, the settlement the parties achieved was "through arms-length negotiations by highly experienced and capable counsel who were fully prepared and demonstrated a thorough understanding of the strengths and weaknesses of their respective claims and defenses."  Francis Decl. ¶ 8; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (recognizing that a mediator's involvement in "settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  This Court should find that Rule 23(e)(2)(A) and (B) are met and that the Settlement is therefore procedurally fair.

## 2.      The Settlement is Substantively Fair

Next, the Court must assess substantive fairness.  Rule 23(e)(2)(C) enumerates four factors to be considered: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing

class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)."

Before Rule 23(e)(2)(C)'s four-factor framework was codified in December 2018, courts in this Circuit employed the nine-factor framework of *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974).[4]  The 2018 amendments to Rule 23 were intended to "add to, rather than displace, the *Grinnell* factors," and there is "significant overlap" under the two frameworks.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (citing 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2)).  Thus, this brief addresses both sets of factors, noting where they overlap.[5]

a.     Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires courts to consider "the costs, risks, and delay of trial and appeal."  This inquiry overlaps with *Grinnell* factors one (the "complexity, expense, and likely duration of the litigation") and factors four, five, and six (the risks of establishing liability and damages and maintaining the class).  *See In re Payment Card*, 330 F.R.D. at 36.  In assessing these risks, the Court need not "decide the merits of the case," "resolve unsettled legal questions," or "foresee with absolute certainty the outcome of the case." *Phoenix COI*, 2015 WL 10847814, at *8 (cleaned up).  "[R]ather, the Court need only assess the risks of litigation against

---

[44] The nine *Grinnell* factors are: (i) "the complexity, expense and likely duration of the litigation," (ii) "the reaction of the class to the settlement," (iii) "the stage of the proceedings and the amount of discovery completed," (iv) "the risks of establishing liability," (v) "the risks of establishing damages," (vi) "the risks of maintaining the class action through the trial," (vii) "the ability of the defendants to withstand a greater judgment," (viii) "the range of reasonableness of the settlement fund in light of the best possible recovery," and (ix) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell Corp.*, 495 F.2d at 463.

[5] The Court need not consider the second *Grinnell* factor – the "reaction of the class" – at this time.  *See, e.g., In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515 (WHP), 2008 WL

14

the certainty of recovery under the proposed settlement." *Id.* (quoting *Global Crossing*, 225 F.R.D. at 459). Courts recognize that "the complexity of Plaintiff's claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (citation omitted).

This litigation was highly complex. Plaintiffs alleged breach of an insurance contract and false illustration claims. Resolving those claims would require "conflicting testimony by experts as to actuarial standards, the original and revised pricing assumptions used by [the insurer] for the [universal life] insurance products at issue, and what it means to 'recoup past losses' or 'discriminate unfairly' within a 'class' of insured." *Phoenix COI*, 2015 WL 10847814, at *6 (holding similarly in Phoenix COI class action).

Especially in light of Covid-related backlogs in Federal Courts, Plaintiffs likely would not have obtained recovery at trial for 3+ years. Defendants, who are represented by three of the largest law firms in the world, indicated that they intended to vigorously dispute class certification, liability, and damages and bring a motion for summary judgment. Even after denial of summary judgment, Plaintiffs likely would have faced still more delays due to the backlog of trials created by the pandemic.[6] Once at trial, Plaintiffs believe that their positions would have been strong, but it is far from clear as to how a jury would decide disputed factual issues. *See State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d

---

5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

[6] Tom McParland, "'Small Steps': Attorneys Welcome SDNY's Easing of COVID-19 Restrictions, But Say Return to Normal Remains Elusive," *New York Law Journal* (June 15, 2021 at 6:31 PM), *available at* https://www.law.com/newyorklawjournal/2021/06/15/small-steps-attorneys-welcome-sdnys-easing-of-covid-19-restrictions-but-say-return-to-normal-remains-elusive/ (recognizing the "ever-growing backlog of cases that are set for jury trials").

1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").

And even if Plaintiffs were to prevail at trial, this case would likely be tied up in years of post-trial briefing and appellate practice. *See Phoenix COI*, 2015 WL 10847814, at *6 ("The Settlement also ends future litigation and uncertainty. Even if the Class could recover a judgment at trial and survive any decertification challenges, post-verdict and appellate litigation would likely have lasted for years."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class.").

These many risks and delays weigh in favor of approval.

### b.   Range of Reasonableness of the Settlement Fund

This Court must consider "the range of reasonableness of the settlement fund," both in light of the risks discussed in the previous subsection and "in light of the best possible recovery." *Grinnell*, 495 F.2d at 463.

The recovery of up to **$123,074,128.32**, when compared to the damages at issue in the litigation, is extraordinary.  The measure of damages on Plaintiffs' claim of breach of contract represented the difference between the COI charges Hancock actually assessed on the policy after implementation of the COI increase and the rate Hancock would have charged had the COI increase not been implemented.  *See, e.g.*, *Gonzales v. Agway Energy Servs., LLC*, No. 5:18-cv-235(MAD)(ATB), 2018 WL 5118509, at *4 (N.D.N.Y. Oct. 22, 2018) (breach-of-contract damages measured by "an amount equal to the difference between the rate charged and the rate that would have been charged" absent breach).  Through August 2021, the date of the parties' mediation, Class Members nationally paid approximately $134,875,757.07 million more than they would have had the 2018 COI increase not been implemented.  Ard Decl. ¶¶ 14, 15(a).

16

Under the Settlement, Class Members recover **91.25% of the $134,875,757.07 in overcharges** through August 2021.  The Settlement's monetary relief, standing alone, is far greater than needed to justify as reasonable.  *See Grinnell Corp.*, 495 F.2d at 455 & n.2 (recognizing that "a satisfactory settlement" could amount to a small fraction – such as "a hundredth or even a thousandth part of a single percent of the potential recovery").  For example, in Phoenix COI, Judge McMahon held that a settlement with a cash award amount equal to $68.5% of COI overcharges was *"one of the most remunerative settlements this court has ever been asked to approve." See Phoenix COI*, 2015 WL 10847814, at *11. This settlement beats that. Courts routinely approve settlements with substantially lower-percentage awards. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (JG)(VVP), 2009 WL 3077396, at *9 (E.D.N.Y. Sept. 25, 2009) (approving settlement value that was 10.5% of total damages); *In re Currency Conversion Fee Antitrust Litig.*, No. 01-mdl-1409 (WP), 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (approving settlement cash award that was 10–15% of total damages).  Furthermore, "settlement assures immediate payment of substantial amounts to Class Members, 'even if it means sacrificing speculative payment of a hypothetically larger amount years down the road.'" *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) (citation omitted).

The Settlement is even more extraordinary in light of the significant value added by its non-monetary relief.  Hancock has agreed to freeze COI rates for five years, despite the fact that the contracts give Hancock discretion to raise rates in the future.  The Settlement also protects the Class in the event that Hancock negotiates side deals with any opt-outs on more favorable terms with regard to a COI freeze.

A decision by Hancock to further increase COI rates is more than just a theoretical possibility.  Chief among the factors Hancock must consider in adjusting COI rates is its future expectations of mortality.  Dkt. 167 ¶ 2.  As at least some insurers have argued, expectations of future mortality have deteriorated in the past two years because of the COVID 19 pandemic.[7]  Absent the COI Freeze, therefore, Hancock might have raised COI rates in next 5 years because of what it contends are changes to its expectations of mortality from COVID 19.  The Settlement therefore protects the Settlement Class from those risks.

The validity clause also provides significant value.  Here, as in the Phoenix COI class action, if a policy is subjected to a successful challenge for lack of insurable interest or misrepresentation, there is a risk that the policy can be voided and rendered worthless.  The validity clause helps ensure that policyowners will get the policy benefit at maturity so long as they continue to pay sufficient premiums.  These results are excellent for the Class, especially in light of the many risks, uncertainties, and delays that Plaintiffs faced.  And Class Counsel's certification of the reasonableness of the settlement, *see* Ard Decl. ¶ 18, is given considerable weight because they are closest to the facts and risks associated with the litigation. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557 (CM), 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) ("[Lead Counsel's] opinion is entitled to great weight." (quotation marks and citation omitted)).

This factor thus weighs in favor of approval.

c.    Effectiveness of Any Proposed Method of Distributing Relief

Next, Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief" be "effective."  A distribution plan satisfies the Rule if it is "reasonable" and has a "rational basis,"

---

[7] *See, e.g.*, *Meek v. Kansas City Life Ins. Co.*, 19-cv-472 (W.D. Mo.), *Expert Declaration of*

especially if "recommended by experienced and competent class counsel." *In re Payment Card*, 330 F.R.D. at 40 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).  Here, Class Counsel, which has extensive experience in class actions, prepared the plan of allocation with the assistance of their damages expert, Robert Mills, who also has significant experience in COI plans of allocation.  Ard Decl. ¶ 17.  Under the plan of allocation, Settlement Class Members will be distributed the Net Settlement Fund in proportion to their share of the overall COI overcharges paid through August 2021.  As noted elsewhere, courts routinely approve of a pro-rata distribution as "straightforward and equitable."  *Phoenix COI*, 2015 WL 10847814, at *12 (collecting cases).  This factor also weighs in favor of approval.

> d.   The Terms of Any Proposed Award of Attorney's Fees

The Court also considers the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Under the Settlement, Class Counsel will apply for an award of attorneys' fees not to exceed 33% of the of the value of the benefits provided by the Settlement to the Final Settlement Class Members, plus reimbursement of Litigation Expenses.  Class Counsel will not receive any funds until the Court has granted its fee request.   Settlement Agreement § 7.1. The Parties have agreed that the Settlement is not conditioned on the Court's approval of Class Counsel's Fees and Expenses request.  *Id.* § 7.7.

Awards of this magnitude have been deemed reasonable in comparable class actions.  *See Puddu*, 2021 WL 1910656, at *6 (finding that "33.3% is within the range of fee awards typically awarded" and collecting cases); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("[I]n numerous common fund cases, fees have been awarded that represent one-third of the settlement fund."); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,

---

*Timothy C. Pfeiffer*, dkt. 90-2 ¶ 54 (Oct. 21, 2021).

No. 06-cv-4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit").  Class Counsel's fee request therefore does not weigh against preliminary approval and will be briefed more fulsomely at the final approval stage.

e.     Any Agreement Required to Be Identified Under Rule 23(e)(3)

Rules 23(e)(2)(C)(iv) and 23(e)(3) require that any agreement "made in connection with the proposal" be identified.  Plaintiffs and Defendants have entered into one such agreement, under which Hancock may terminate this Agreement no later than seven business days after the Opt-Out Period expires, if the percentage of the Settlement Class (as measured by Policy Settlement Amount) that submits requests for exclusion from the Settlement Class exceeds the percentage set forth in the Confidential Settlement Term Sheet dated October 18, 2021 (which will be provided to the Court upon request).  Settlement Agreement § 10.1.  This factor is neutral and does not undermine preliminary approval.

3.     The Plan of Allocation Treats Class Members Equitably

The final Rule 23(e)(2) factor requires the Court to assess whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Here, the proposed plan of allocation equitably treats class members by distributing damages on a *pro rata* basis using each Class Members' share of the total damages.  Class members who paid a COI overcharge will be paid in proportion to their share of the overall COI overcharges paid through August 31, 2021.  Courts have repeatedly approved of *pro rata* allocation plans.  *See, e.g.*, *Phoenix COI*, 2015 WL 10847814, at *12 ("This type of distribution, where funds are distributed on a *pro rata* basis, has frequently been determined to be fair, adequate, and reasonable."); *Meredith*, 87 F. Supp. 3d at 667 ("This plan of allocation has an obvious rational basis, appears

to treat the class members equitably, faced no objections from class members, and has the benefit of simplicity.").

### 4.   The Proposed Settlement Satisfies Other Relevant Factors

#### a.   Stage of Proceedings.

A court must also consider the third *Grinnell* factor, "[t]he stage of the proceedings and the amount of discovery completed." *Grinnell*, 495 F.2d at 463.  The Court assesses whether Plaintiffs "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02-cv-5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

Here, Plaintiffs engaged in extensive discovery before mediating this case.  Plaintiffs took and defended 23 highly technical depositions (some of which took place over two days). Representatives of six of the seven Plaintiffs were deposed.  Plaintiffs also issued eight subpoenas to relevant third parties, which required substantial follow-up meet and confers to secure the relevant evidence.  Plaintiffs reviewed nearly one million pages of documents produced by Defendant.  Class Counsel and their experts carefully analyzed the highly complex actuarial models, which provided the foundational evidence for Plaintiffs' claims of breach. Plaintiffs also reviewed thousands of pages produced by the relevant third parties whom they subpoenaed. Ard Decl. ¶ 10.

The bottom line is: Counsel had an extensive discovery record against which to measure the adequacy of settlement.  This factor also supports approval.

#### b.   Defendants' Ability to Withstand a Greater Judgment

The Court also considers "the ability of the defendants to withstand a greater judgment." *Grinnell Corp.*, 495 F.2d at 463.  Here, even if Defendants could withstand a greater judgment, this does not undermine the fairness of the Settlement.  *See, e.g.*, *Phoenix COI*, 2015 WL

21

10847814, at *9 (noting that defendant's ability to pay more "does not, standing alone, indicate the settlement is unreasonable or inadequate" (citation omitted)).

c.    Scope of the Release

Courts may also look to the scope of the release. *See Payment Card*, 330 F.R.D. at 42 n.41. Here, the Settlement Class would release "all claims that were or could have been asserted in the Action concerning or arising out of the facts alleged in the Action," but not "new Claims that could not have been asserted against John Hancock in the Action" that arise "solely out of" any future COI increases.  Settlement Agreement §§ 1.15, 1.40.  These releases are appropriate. *See Wal-Mart Stores*, 396 F.3d at 107 ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.").

5.    Conclusion

In sum, the vast majority of the relevant factors under Rule 23(e)(2) and *Grinnell* strongly support approval, while a few factors are neutral.  This Court should find that it is likely to approve the Settlement.

**B.    The Settlement Class Warrants Preliminary Certification**

This Court must also determine whether "it will likely be able to . . . . certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(ii).  "The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification."  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 201–02 (S.D.N.Y. 2018) (quoting *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011)).  A court may grant certification where the Settlement Class satisfies the four

requirements of Fed. R. Civ. P. 23(a) and at least one subsection of Rule 23(b). *See Global Crossing*, 225 F.R.D. at 453.

        1.    <u>The Settlement Class Meets the Requirements of Rule 23(a)</u>

        a.    <u>Numerosity</u>

First, as to numerosity, "[c]ourts generally presume numerosity where a class consists of forty or more members." *Grenawalt v. AT & T Mobility, LLC*, No. 11-cv-2664 (ALC), 2014 WL 4832318, at *3 (S.D.N.Y. Sept. 29, 2014) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Here, there are about 1,500 policies in the COI Overcharge Class. Ard Decl. ¶ 14. Numerosity is easily met.

        b.    <u>Commonality</u>

Second, commonality is satisfied when a class action may "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The commonality requirement "is not demanding." *Brooklyn Ctr. for Indep. for the Disabled v. Bloomberg*, 290 F.R.D. 409, 418 (S.D.N.Y. 2012). "A single common question will do." *Wal-Mart*, 564 U.S. at 359 (cleaned up).

Here, commonality is easily satisfied. Each Class Member alleges that Hancock breached one of two standardized, substantially similar provisions in adjusting cost of insurance rates. Courts routinely find that Rule 23(a)'s commonality requirement is satisfied in cases alleging breach of COI provisions in standardized universal life contracts. *See, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2013 WL 12224042, at *8 (S.D.N.Y. July 12, 2013) ("[B]reach of contract *is* the central issue in the case brought by [plaintiff] on behalf of the 2011 Class." (emphasis in original)).

        c.    <u>Typicality</u>

23

Third, Rule 23(a) requires that claims of class plaintiffs be typical of other class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is similarly "not demanding." *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012). It is satisfied when "each class member's claims arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Surdu v. Madison Glob., LLC*, No. 15-cv-6567 (HBP), 2017 WL 3842859, at *4 (S.D.N.Y. Sept. 1, 2017) (internal quotations omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993).

Here, Plaintiffs easily satisfy typicality: all claims arise from Hancock's conduct that violated substantially similar form contractual provisions across every policy in the Class. *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 75 (E.D.N.Y. 2004) (finding typicality when insurer's "contracts are uniform regarding the provisions pertinent to this litigation"). Like every other Class Member, Plaintiffs contend that Hancock breached the form contracts by deducting from policyholder accounts cost of insurance charges that were not based on the explicit terms of the Subject Policies. *See In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2020 WL 4694172, at *6 (S.D.N.Y. Aug. 13, 2020) (holding that "commonality and typicality" were satisfied in similar class action involving "form contracts" where the "COI increase resulted from a single decision based on common analysis").[8]

---

[8] *Accord Phoenix COI*, 2013 WL 12224042, at *11 (typicality satisfied when "all members of the class were allegedly subjected to a COI increase in violation of the terms of their policies"); *Larson v. John Hancock Life Ins. Co.*, No. RG16 813803, 2017 WL 4284163, at *10 (Cal.Super. Mar. 23, 2017) (certifying class of policy owners because the plaintiff's claims were "typical,

24

d.      Adequacy of Representation

Adequacy of representation is measured by two standards: "First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  To defeat a class certification motion on this ground, "the conflict must be fundamental." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (cleaned up).  Here, for the reasons set forth in Section II.A.2, this factor is easily met.

2.      The Settlement Class Meets the Requirements of Rule 23(b)(3)

Certification of a class under Rule 23(b)(3) requires a showing that "questions of law or fact predominate over any questions affecting only individual members."

a.      Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  The predominance requirement is relaxed for a settlement class because "with a settlement class, the manageability concerns posed by numerous individual questions . . . disappear." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012).  Where, as here, Plaintiffs seek certification for the purposes of settlement, manageability is not at issue. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial . . . ." (internal citation omitted)).

---

indeed, substantially identical, to those of the class" because the plaintiff and the class agreed to the same policy language); *see also Claridge v. N. Am. Power & Gas, LLC*, 2016 WL 7009062

Under either the ordinary or relaxed standard, the Settlement Class satisfies predominance. Courts routinely find that predominance is satisfied for claims of breach of standardized, form contracts like the breach alleged in this case. *See, e.g.*, *Phoenix COI*, 2013 WL 12224042, at \*13 ("There is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that . . . contain the same or essentially the same terms.") (collecting cases).[9]   Likewise, courts throughout the country have ruled that common issues predominate in class actions alleging that insurance carriers breached form contracts by charging inflated COI rates. *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1955425, at \*6 (W.D. Mo. Apr. 24, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020) ("The terms of the Policy are the same for all class members. State Farm has not suggested that the determination of COI rates varied on a case-by-case basis. Thus, common questions predominate."); *AXA COI*, 2020 WL 4694172, at \*7; *Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374, 382–84 (S.D.N.Y. 2019) ("*Voya COI*"); *Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378 (CAS)(AJW), 2017 WL 6496803, at \*11–13 (C.D. Cal. Dec. 11, 2017); *Larson*, 2017 WL 4284163, at \*5-7; *Lincoln COI*, 33 N.E.3d at 1171.

---

(S.D.N.Y. Nov. 30, 2016), at \*4 (typicality satisfied for challenge made to "statements made in a widely dispersed document and a uniform contract").

[9] *Accord Advance Tr. & Life Escrow Servs., LTA v. Sec. Life of Denver Ins. Co.*, No. 1:18-cv-01897(DDD)(NYW), 2021 WL 62339, at \*8–9 (D. Colo. Jan. 6, 2021) (certifying 44-jurisdiction class of insurance policy owners that entered form contracts); *Steinberg*, 224 F.R.D. at 74 ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such."); *accord Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment."); 1 McLaughlin on Class Actions § 5:56 ("Breach of contract claims arising out of a standardized, form contract ordinarily are suitable for class certification unless numerous inquiries are required to determine whether a breach of the contract occurred as to each class member.").

For each and every policy in the Class, common evidence would have shown that Hancock breached the form contracts by deducting from policyholder accounts cost of insurance charges that were not based on the explicit terms of the Subject Policies. The common factual questions that would predominate all turn on common evidence from Hancock's documents and data, including what Hancock's expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, or tax assumptions. None of this turns on the individual circumstances of any individual policyholder.

Although not required under Second Circuit precedent, damages can be mechanically measured on a classwide basis. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ("[T]he fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3)." (cleaned up)). Plaintiffs' damages expert Robert Mills has calculated the amount of overcharge for each Class policy during the class period using data provided by Hancock. Ard Decl. ¶ 17. The amount that Hancock overcharged class members through inflated COIs is a proper measure of damages, not the least because breach of contract damages can be measured by "an amount equal to the difference between the rate charged and the rate that would have been charged" in the absence of the breach. *Gonzales*, 2018 WL 5118509, at *4. "[S]imple mechanical calculations" like these "easily resolve[]" "individual [damages] inquiries." *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 276 (E.D.N.Y. 2016).

> b.      A Class Action is Superior

Finally, the Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication. *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 301 (E.D.N.Y. 2006). The Court needs to consider "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent

adjudications." *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996).  Here, any interests of Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism.  *In re Buspirone Patent Litig.,* 210 F.R.D 43, 58 (S.D.N.Y. 2002) ("The numerous common issues of fact and law and the difficulty of numerous individual lawsuits indicates that a class action is superior to other methods for a fair and efficient adjudication of the controversy.").

   3.  <u>Proposed Class Counsel Satisfy Rule 23(g) and the Class Representatives Are Proper</u>

Rule 23(g) governs appointment of counsel for the Class.  Here, Class Counsel has vigorously prosecuted this case and also spent tireless hours achieving this highly favorable Settlement for the Class. Ard Decl. ¶¶ 6-12.  Susman Godfrey L.L.P. has significant experience in both prosecuting and defending class actions, including classes of policyowners seeking recovery of COI overcharges against insurers, which makes the firm particularly well-suited to serve as Settlement Class Counsel.  *Id.* ¶ 3.  Regarding the Class Representatives, for the reasons explained above, the seven Plaintiffs have claims that are typical and adequate for the Settlement Class, and should be appointed representatives of the Settlement Class.

   4.  <u>Conclusion</u>

In sum, all relevant factors favor class certification.  This Court should find that it will likely be able to certify the class for purposes of judgment on the proposal and appoint Susman Godfrey as Class Counsel and Plaintiffs as Class Representatives.

   **C.**   **<u>Notice to the Class</u>**

Rule 23(e)(1)(B) requires that notice be directed "in a reasonable manner to all class members who would be bound by the proposal."  Plaintiffs request that (i) the Court approve the notice to the Class, *see* Intrepido-Bowden Decl., Exhibits B-C, (ii) appoint JND as Settlement

Administrator, (iii) approve of distribution of the notices via First Class Mail and publication notice, and (iv) approve of the proposed 45-day opt-out period.

To satisfy Rule 23, the notice must satisfy two requirements.  First, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally and informs the Class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Charron*, 874 F. Supp. 2d at 191 (cleaned up); *accord Wal-Mart Stores, Inc.*, 396 F.3d at 113-14 ("There are no rigid rules . . . ; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." (internal quotations omitted)).  Second, the manner of sending notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Amchem*, 521 U.S. at 617.

***First,*** the form of notice here satisfies due process because it informs Class members of the terms of the settlement and the options open to them in plain language. *See Charron*, 874 F. Supp. 2d at 191 (the form of notice is "adequate if it may be understood by the average class member") (citation omitted).  The notice, which is attached to the Settlement, Ard Decl., Ex. 2, *see also* Intrepido-Bowden Decl. Ex. B, communicates in plain language the essential elements of the Settlement and the options available to Class Members in connection with the Settlement, including the various monetary and non-monetary relief and the fact that the Final Settlement Fund will be used to pay any Court approved reimbursement of costs, attorneys' fees, and incentive awards.  It also provides specific information regarding the date, time, and place of final approval.  *Id.*

*Second,* the manner of sending notice, which relies on direct mailing to individual Settlement Class Members using Hancock's address database, is the best notice practicable here. Direct notice will be sent by first-class mail to all Settlement Class Members using their last known address.   Intrepido-Bowden Decl. ¶¶ 24-27.   Sending notice via first class mail is appropriate. *See In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14-cv-7990 (RWS), 2017 WL 4541434, at *9 (S.D.N.Y. Oct. 10, 2017) ("Although Plaintiffs did not propose a manner in which to deliver the notice, delivery by first class mail is proper."); *U.S. v. New York*, No. 13-CV-4165 NGG MDG, 2014 WL 1028982, at *5 (E.D.N.Y. Mar. 17, 2014) (where class notice was mailed directly to 3,876 class members "who were identified by Defendants," the "simple and direct notice was 'the best notice practicable under the circumstances'" (quoting *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008)).   This is a particularly effective method because in-force policyholders are expected to maintain their current addresses with Hancock.   The Settlement Administrator will also run an update of the last known addresses provided by Defendants through the National Change of Address database before initially mailing the notice.   Intrepido-Bowden Decl. ¶ 25.   The Settlement Administrator will also research and attempt re-delivery of any Notices returned as undeliverable. *Id.*

Notice will be provided over other media as well.   A website will also be maintained so that anyone can read about the settlement and easily find all documents pertinent to the settlement.   Intrepido-Bowden Decl. ¶¶ 30-31.   Notices will be published in *USA Today*, *The New York Times*, and *The Financial Times* on different dates, and will be distributed through a press release over the *PR Newswire* internet wire service. *Id.* ¶¶ 28-29.   An automated toll-free number will also be available. *Id.* ¶¶ 32-33.

*Third*, this Court should appoint JND as Settlement Administrator.   JND has served in

this role in connection with numerous class actions in this District and has the experience and resources necessary to fulfill the role here. *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2020 WL 7389330, at *5 (S.D.N.Y. Dec. 16, 2020) (appointing JND as claims administrator and noting that its principals "have more than 75 years-worth of combined class action legal administration experience" and have "handled some of the largest recent settlement administration issues"); *see also* Intrepido-Bowden Decl. ¶¶ 3-6.

*Finally*, the opt-out period of 45 calendar days is reasonable. *See, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009) (approving 30-day opt-out period in complex securities fraud class action).

The Court should therefore approve the proposed form and manner of notice as described in paragraphs 24-33 of the Intrepido-Bowden Declaration.

### D.   The Proposed Distribution Plan is Reasonable

A distribution plan is fair and reasonable as long as it has a "reasonable, rational basis." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Because mathematical precision is impossible in calculating claims for a large class, courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

Here, as explained in the notice, the cash distribution will be made as follows. The Settlement Class Members paid a higher COI charge than they would have absent the COI increase. They will receive all distributions from the Net Settlement Fund. All such funds will be distributed to Class members on a *pro rata* basis. Class members who paid a COI overcharge will be paid in proportion to their share of the overall COI overcharges paid through August 31, 2021. All policies will also benefit from the COI Freeze and the Validity Clause. This type of

distribution, where funds are distributed *pro rata*, "has frequently been determined to be fair, adequate, and reasonable."   *Phoenix COI*, 2015 WL 10847814, at *12 (collecting cases). Accordingly, the distribution plan is fair and reasonable, and should be preliminarily approved.

### E.    **Proposed Schedule**

Plaintiffs propose the following dates for the deadlines for the notice plan and for the final fairness hearing.

| EVENT | DAYS FROM PRELIMINARY APPROVAL |
|---|---|
| Hancock to provide a list of available owner-address | 5 Days |
| Notice of Class Action Settlement to be Mailed | 30 Days |
| Publication notice to be completed | 35 Days |
| Class Counsel to file motion for award of attorneys' fees, expenses and service awards | 60 Days |
| Opt-Out and Objection Deadline | 75 Days |
| Class Counsel to file motion in support of final approval and reply briefs in support of attorneys' fees, expenses and service awards | 90 Days |
| Deadline to serve any reply brief in support of motion for final approval | 103 Days |
| Deadline to raise issues relating to conflicting elections or challenges to ownership with Court | 105 Days |
| Final Approval Hearing | 110 Days |

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement and distribution plan; (ii) preliminarily certify the Settlement

Class, and preliminarily appoint Plaintiffs as Class Representatives and Susman Godfrey L.L.P.

as Class Counsel for Settlement purposes; (iii) approve the proposed form and manner of notice

to the Settlement Class; and (iv) schedule a date and time for a hearing to consider final approval

of the Settlement and related matters.

Dated:  December 30, 2021

                                        */s/Seth Ard*
                                        Seth Ard (SA-1817)
Ryan Kirkpatrick
Zachary B. Savage
Ari Ruben
Amy Gregory
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Tel.: (212) 336-8330
Fax: (212) 336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com
zsavage@susmangodfrey.com
aruben@susmangodfrey.com
agregory@susmangodfrey.com

Steven Sklaver
Glenn Bridgman
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com

Andres Healy
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite  3800
Seattle, WA  98101
Tel: (206) 505-3834
Fax: (206) 516-3883
ahealy@susmangodfrey.com

*Attorneys for Plaintiffs*